SMITH *v.* MUTUAL BENEFIT LIFE INSURANCE COMPANY.

1. MORTGAGES—COMMERCIAL PROPERTY—DEFAULT—ASSIGNMENT OF RENTS—RECEIVERS.

A mortgage on commercial or industrial property not excepted by statute may properly contain a provision for assignment of rents and for appointment of receiver to collect the rents in event of default (CLS 1956, §§ 554.231–554.233).

2. SAME—DEFAULT—ADDITIONAL SECURITY—COLLECTION OF RENTS—RECEIVERS—COMMERCIAL PROPERTY.

The statute authorizing the inclusion in a mortgage on commercial or industrial property of a provision assigning rents to the mortgagee and for appointment of a receiver to collect rents in the event of default does not make the taking of possession or the appointment of a receiver a condition precedent to the collection of rents, the collection of rents not being an incident to the right of possession of the land but a distinct remedy and additional security (CLS 1956, §§ 554.231–554.233).

3. SAME—DEFAULT—COLLECTION OF RENTS—COMMERCIAL PROPERTY.

No foreclosure and sale is required to exercise the right to collect rents by the mortgagee upon default of the mortgagor on commercial or industrial property (CLS 1956, §§ 554.231–554.233).

REFERENCES FOR POINTS IN HEADNOTES

[1] 36 Am Jur, Mortgages § 293; 37 Am Jur, Mortgages § 916. Validity of provision in real-estate mortgage as to rents and profits. 91 ALR 1217.
[2, 3, 7, 9] 36 Am Jur, Mortgages § 293.
[4] 37 Am Jur, Mortgages § 927.
Right of mortgagee to receiver. 111 ALR 730.
[5] 37 Am Jur, Mortgages § 770.
Right to receive rent as between mortgagor and mortgagee of leased premises. 105 ALR 744.
[6] 37 Am Jur, Mortgages § 928.
Right of mortgagee to receiver. 111 ALR 730.
[8] 36 Am Jur, Mortgages § 290.

**4.** SAME—DEFAULT—COLLECTION OF RENTS—COMMERCIAL PROPERTY—
POSSESSION OF MORTGAGOR—RECEIVER.

A court of equity will give aid, in appropriate manner and on
just terms, to conserve the rents under a mortgage upon com-
mercial or industrial property in the event of the mortgagor's
default, by putting a receiver in possession of the property
if the collection of rents under an assignment thereof in the
mortgage may not be done without disturbing the possession
of the mortgagor (CLS 1956, §§ 554.231–554.233).

**5.** SAME — COMMERCIAL PROPERTY — COLLECTION OF RENTS — DE-
FICIENCY.

The right to collect rents under an assignment thereof in a mort-
gage on commercial or industrial property continues after
foreclosure sale, if there be a deficiency, until the deficiency is
paid but ceases upon expiration of the period of redemption
if the premises are not redeemed (CLS 1956, §§ 554.231–
554.233).

**6.** SAME — COMMERCIAL PROPERTY — DEFAULT — RECEIVERS — COL-
LECTION OF RENTS — APPLICATION OF RENTS.

It was proper for trial court to appoint a receiver to collect rents
under mortgage on property containing 4 stores upon default
of holders of the mortgagor interest, and apply the rents to the
accrued interest, maintenance costs, insurance, taxes, and the
deficiency until the expiration of the redemption period (CLS
1956, §§ 554.231–554.233).

**7.** SAME—COMMERCIAL PROPERTY—DEFAULT—ASSIGNMENT OF RENTS.

Provision of mortgage on 4-store property that "in event of any
default or defaults in paying said principal and interest, such
rents and profits are hereby assigned to the holder of this
mortgage as further security for the payment of said in-
debtedness" constituted an assignment of the rents involved
after default until expiration of period of redemption from
sale under foreclosure (CLS 1956, §§ 554.231–554.233).

**8.** SAME—COMMERCIAL PROPERTY—NOTICE OF DEFAULT—STATUTES.

Notice of default given by mortgagee under mortgage on 4-
store property to each tenant and occupier of the mortgaged
premises and filing of such notice and recording thereof in the
office of register of deeds complied with requirements of statute
authorizing inclusion of such an assignment in a mortgage on
that type of property (CLS 1956, §§ 554.231–554.233).

**9.** SAME — COMMERCIAL PROPERTY — DEFAULT — DEFICIENCY — AS-
SIGNMENT OF RENTS—APPLICATION OF RENTS BY RECEIVER.

Agreement in real-estate mortgage note that the holder thereof
would make no claim against the makers of such note for any

deficiency created by foreclosure or any other personal liability *held*, not to have limited provision in the mortgage assigning the rents to the mortgagee in the event of default, hence, permitted application of rents collected by receiver ·toward payment of deficiency as no personal liability was thereby imposed upon the mortgagor, just income from the property during pendency of the foreclosure (CLS 1956, §§ 554.231– 554.233).

Appeal from Wayne; Sullivan (Joseph A.), J. Submitted October 6, 1960. (Docket No. 27, Calendar No. 48,421.) Decided December 2, 1960.

Bill by Barney Smith, Marion Smith, Robert L. Fenton, and Theodore Schwartz against the Mutual Benefit Life Insurance Company, a New Jersey corporation, to restrain rent collection on commercial property during mortgage default and foreclosure. Cross bill to establish right to rents and for receiver to manage property. Cadroy Management Company, a copartnership which had been appointed to receive rents in interim, together with Associates, Incorporated, a Michigan corporation, intervene as parties plaintiff. Bill dismissed and decree entered appointing receiver, requiring accounting from interim agency, applying rents collected in past and during foreclosure to taxes, expenses, and mortgage obligation. Plaintiffs appeal. Affirmed.

*Lewis Daniels* and *James M. Wienner,* for plaintiffs.

*Dickinson, Wright, McKean & Cudlip (Edward P. Wright* and *Patrick J. Ledwidge,* of counsel), for defendant.

KAVANAGH, J. Plaintiffs filed a bill of complaint in the circuit court for the county of Wayne attempting to restrain the defendant life insurance company

from in any manner interfering with them in the collection of rents from the tenants under existing leases on plaintiffs' property. They further sought to require defendant insurance company to account for and pay over to them all moneys received by defendant from the tenants.

Defendant insurance company filed an answer denying plaintiffs were entitled to any relief and alleging that it was collecting the rents from plaintiffs' tenants relying on the provisions of a mortgage given by plaintiffs Smith to defendant assigning the rents to defendant in the event of default in the mortgage payments, under the provisions of PA 1953, No 210.[1] Defendant filed an answer and a cross bill setting forth that it was, under the statute, foreclosing a mortgage executed and delivered to it as mortgagee. It sought the appointment of a receiver to collect the rents and apply the same to the maintenance and management of the property, including payment of taxes, insurance, and interest on the mortgage. Plaintiffs filed an answer as cross defendants denying defendant and cross plaintiff was entitled to such relief.

A stipulation of facts was submitted to the court and supplemented by some testimony.

Plaintiffs Barney Smith and Marion Smith, his wife, were the sole owners of certain commercial real property located on West Vernor highway in the city of Detroit, Michigan. The property consisted of 4 retail stores situated in one building and the land incident thereto. On January 13, 1955, Mr. and Mrs. Smith borrowed $110,000 from defendant The Mutual Benefit Life Insurance Company and executed a note and mortgage to secure repayment of the amount borrowed. The mortgage note required payments of principal and interest in the amount of

[1] CLS 1956, §§ 554.231–554.233 (Stat Ann 1959 Cum Supp §§ 26-.1137[1]–26.1137[3]).

$869.90 on the first day of each month commencing on March 1, 1955.

At the time of execution of the mortgage there were 4 leases existing upon the mortgaged premises. The mortgage note contained the following provision:

"The holder hereof agrees to look only to the property covered by the mortgage securing this note, and in case of foreclosure of said mortgage to make no claim against the makers hereof for any deficiency created by such foreclosure, or any other personal liability."

The mortgage contained the following provision assigning the rents to the mortgagee in the event of default:

"And in event of any default or defaults in paying said principal or interest, such rents and profits are hereby assigned to the holder of this mortgage as further security for the payment of said indebtedness."

Subsequent to the execution of the mortgage and note plaintiffs Smith sold Robert L. Fenton and Theodore Schwartz a partial interest in the property. Default occurred in the terms and conditions of the mortgage in that no payments of principal and interest were made from February 1, 1958, to the time of trial. On April 30, 1958, the mortgagee filed and recorded in the office of the Wayne county register of deeds a notice of default in the terms and conditions of said mortgage, and on the same date true and exact copies of the notice and mortgage were served by the mortgagee upon each tenant and occupier of the mortgaged premises. Defendant contends the recorded notice was served and filed in accordance with the terms of PA 1953, No 210.

On June 20, 1958, the mortgagee commenced statutory advertisement procedure to foreclose the mort-

gage, pursuant to the power of sale therein contained, and on October 17, 1958, such sale was held. The mortgagee was the only bidder at the sale, and its bid was in the amount of $94,777.22, leaving a deficiency in the amount of $5,089.46. Pursuant to such sale, a sheriff's deed was executed and delivered on October 17, 1958, to the mortgagee, which deed was recorded October 24, 1958, in the office of the register of deeds for Wayne county.

On June 20, 1958, appellants commenced the present action to enjoin the mortgagee from the collection of rents. Cadroy Management Company was appointed by the trial court under a temporary order to collect the rents during the pendency of the litigation. Cadroy Management Company was a partnership composed of Barney Smith, one of the mortgagors, Ben B. Fenton (father of plaintiff Robert L. Fenton) and 2 others. Cadroy Management Company and Associates, Incorporated—another company owned and controlled by plaintiffs—intervened as plaintiffs. At the time of trial in March, 1959, the 1959 Wayne county taxes in the amount of $2,327.52 (including interest and penalties) and the second half of the 1958 city of Detroit taxes in the amount of $1,032.30 were unpaid.

Following trial, the circuit court dismissed plaintiffs' bill of complaint. The trial court entered a decree on defendant's cross bill providing for the disposition of the rents collected to discharge the deficiency; providing for payment of unpaid taxes; and appointing a receiver in the place of Cadroy Management Company to carry out the terms of the decree. The court's decree held that defendant, as mortgagee, was entitled to the receipt of all rents collected from April 30, 1958, from or due from tenants whose leases were in existence at the time the mortgage was given. It further held that on October 17, 1958, the mortgage was foreclosed and

that such sale resulted in a deficiency in the amount of $5,089.46. The trial court held the rent collections after foreclosure amounted to $400. The court limited defendant's right to receive rents as mortgagee to the amount of such deficiency less such deduction plus interest from and after October 17, 1958, the date of sale. The trial court further decreed that rents from the premises should be used to maintain the premises, including the payment of all taxes and insurance premiums. The court appointed a new receiver to carry out the terms of the decree and required Cadroy Management Company to account for the moneys it collected. The court further directed the receiver to apply the moneys collected from rents under the 4 leases to reimburse the defendant for the sum of $4,689.46 with interest at 7% from October 17, 1958, to the date of payment, or such portion of such sum as the funds would permit. Any balance remaining in the hands of the receiver was to be applied to the payment of unpaid and delinquent taxes, interest and penalties, or such part of them as such moneys would permit. The receiver was to be paid a reasonable sum per month for his services. He was to use such balance and current collections of rents to pay any real-estate taxes or portion thereof levied or imposed against the premises after April 30, 1958, including any portion of the 1958 taxes left unpaid, and the 1959 city of Detroit taxes levied against such premises pro rata to October 17, 1959, the date of expiration of the redemption period. The receiver was to pay operating expenses and insurance policy premiums due or to become due to October 17, 1959. Any excess of the rents was to be paid to the mortgagee until October 17, 1959, or until the total of all payments actually made to defendant equaled $4,689.46 with interest from October 17, 1958, whichever first occurred. The balance of rents, if any, was to be paid

to plaintiffs. The court retained jurisdiction over the subject matter and the parties in order to carry out the provisions of the decree.

Plaintiffs appeal, claiming there was no assignment of rents under the terms of the note and mortgage pursuant to PA 1953, No 210. They also contend that the mortgagors of property sold under foreclosure sale by advertisement cannot be compelled to pay taxes which were not due and payable at the time of sale of the mortgaged premises and which were not included in the bid or purchase price. It is appellants' further contention that the assignment of rents does not extend beyond the foreclosure sale or commencement of foreclosure proceedings. Lastly, appellants contend that paragraph 6 of the mortgage instrument, on which the appellee relies, does not conform to the requirements of PA 1953, No 210.

Appellants attempt to support their position by the citation of authorities which have no relationship to this particular case. They are authorities dealing with ordinary mortgages not subject to the assignment of rents under PA 1953, No. 210.[2]

---

[2] CLS 1956, §§ 554.231–554.233 (Stat Ann 1959 Cum Supp §§ 26-.1137[1]–26.1137[3]), which read as follows:

"Sec. 1. Hereafter, in or in connection with any mortgage on commercial or industrial property other than an apartment building with less than 6 apartments or any family residence to secure notes, bonds or other fixed obligations, it shall be lawful to assign the rents, or any portion thereof, under leases upon the mortgaged property to the mortgagee, as security in addition to the property described in such mortgage: Provided, however, such assignment of rents shall be binding upon such assignor only in the event of default in the terms and conditions of said mortgage, and shall operate against and be binding upon the occupiers of the premises from the date of filing by the mortgagee in the office of the register of deeds for the county in which the property is located of a notice of default in the terms and conditions of the mortgage and service of a copy of such notice upon the occupiers of the mortgaged premises.

"Sec. 2. The assignment of rents, when so made, shall be a good and valid assignment of the rents to accrue under the lease or leases existing at the time of such mortgage, against the mortgagor or mortgagors or those claiming under or through them from the date

By PA 1843, No 62,[3] the legislature provided that no action of ejectment could be maintained by a mortgagee, or his representatives or assigns, for the recovery of mortgaged premises until the title thereto had become absolute upon a foreclosure of the mortgage. This statute had the effect of preventing the mortgagee from obtaining rents and income from the property occupied by the mortgagor until expiration of the period of redemption. In 1925 the legislature made possible the elimination of the effect of the 1843 statute in the case of property subject to trust mortgage. This trust-mortgage statute, PA 1925, No 228,[4] in effect restored the pre-1843 law of mortgages as to trust mortgages, providing for the assignment of rents, appointment of receiver and possession during foreclosure. *Massachusetts Mutual Life Ins. Co.* v. *Sutton*, 278 Mich 457.

---

of the recording of such mortgage, and shall be binding upon the tenant under said lease or leases upon service of a copy of the instrument under which such assignment is made, together with notice of default as required by section 1 of this act.

"Sec. 3. While the mortgage remains in force no modification of the rental covenants in such lease shall be binding upon the holder of such mortgage without his written consent thereto."

[3] The substance of this act appears in RS 1846, ch 108, § 61, and was incorporated in the judicature act of 1915, ch 29, § 54 (CL 1948, § 629.54 [Stat Ann § 27.1967]).—REPORTER.

[4] CL 1948, §§ 554.211, 554.212 (Stat Ann 1953 Rev §§ 26.1131, 26.1132), which read as follows:

"Sec. 1. Hereafter, in or in connection with any trust mortgage or deed of trust, to secure bonds or obligations issued or to be issued thereunder, it shall be lawful to assign the rents and profits of the property mortgaged to the trustee or trustees under the trust mortgage or deed of trust for the benefit of the bondholders and holders of the obligations issued or to be issued under the trust mortgage or deed of trust.

"Sec. 2. The assignment of rents and profits, when so made, shall be a good and valid assignment of rents as against the mortgagor or mortgagors or those claiming under or through them from the date of the recording of the trust mortgage or deed of trust, and shall operate against and be binding upon the occupiers of the premises from the date of the filing by the trustee or trustees in the office of the register of deeds for the county in which the property is located of a notice of default in the terms and conditions of the trust mortgage or deed of trust, and service of a copy of such notice upon the occupiers of the mortgaged premises."

The legislature, by PA 1953, No 210, has now made possible the elimination of the effect of the 1843 statute in the case of mortgages on commercial or industrial property (with some exceptions shown in the statute) so that assignment of rents may be made and a receiver appointed to collect the rents in event of default.

The questions raised by appellants with reference to the assignment of rents during foreclosure and subsequent to foreclosure sale, under PA 1925, No 228, were disposed of by Justice FEAD in the case of *Security Trust Co.* v. *Sloman,* 252 Mich 266, where he said (pp 271, 273, 274):

"This raises the question of first impression, who, the mortgagor, mortgagee, or purchaser, is entitled to the rents and profits of the premises covered by a trust mortgage, between sale on foreclosure and redemption or expiration of period of redemption, under PA 1925, No 228.   *   *   *

"Unlike statutes of some States, our act makes neither the taking of possession or the appointment of a receiver a condition precedent to the collection of rents. It may be necessary in a given case to have the aid of the court, by appointment of receiver, to make collections, but this does not justify the addition, to those imposed by statute, of conditions to the exercise of the right. Collection of rents is not merely an incident to the right of possession of the land, but is a distinct remedy and additional security.

"The act is not perfectly drafted nor entirely complete. It leaves something to be read into it by construction. Thus, it does not state the obviously intended requirement that rents collected by the trustee shall be applied on the mortgage debt. But it is workable and its purpose is unmistakable.

"Its outstanding features are:

(1) It was designed for the benefit of holders of obligations under trust mortgages, usually the gen-

eral public who rely on others for financial guidance, and is to be given effect to that end.

"(2) While the right to collect rents is as security, it provides for their 'assignment,' not their 'mortgage,' as the term is used in connection with other property. No foreclosure and sale are required to exercise the right. The assignment may become effective at once on default and in advance of proceedings for foreclosure.

"(3) The rents are not part of the mortgaged premises, nor do they necessarily run with them. The assignment is by way of additional security. It may, but need not, be made in the mortgage. It may be by separate writing at or after the execution of the mortgage.

"(4) The act provides a new remedy not before enjoyed. *Nusbaum* v. *Shapero,* 249 Mich 252. It does not purport to make any change in the general mortgage law by modifying the method, conditions, or effect of foreclosure, sale, redemption, or possession before or after sale. Only such changes in the mortgage relation can be fairly read into the law as are essential to give it the proper effect."

The Court further held (pp 274, 275):

"1. That the trustee is entitled to the rents upon default and performance of the statutory conditions. If this may be done without disturbing the possession of the mortgagor, well and good. If it may not be so done, a court of equity will give aid, in appropriate manner and on just terms, to conserve the rents to the trustee, even to the extent of putting a receiver in possession.

"2. That the right of the trustee to collect rents, being for the benefit of bondholders, continues after sale, if there be a deficiency, until the deficiency is paid; but, as the assignment is given in connection with the mortgage and does not modify its conditions, it is not superior to it. The right ceases at the expiration of the period of redemption if the premises are not redeemed.

"3. That the purchaser on foreclosure sale takes only the mortgaged property, not the rents, subject to the owner's right of possession during the redemption period, as it may be modified by the right of the trustee to collect rents for deficiency.

"In fine, the purpose of the act is to put the trustee in the shoes of the mortgagor until the debt is paid, with all his rights to the rents and profits as long as he, under the general law of mortgages, could enjoy them."

The language of the 1953 act and the 1925 act are virtually the same. The legislature in 1953 had in mind giving the mortgagees holding mortgages on certain commercial or industrial property the same legal rights as were granted by the 1925 legislature to the holders of trust mortgages.

We think the trial court properly interpreted the 1953 act in holding that he had authority under it to appoint a receiver to collect the rents and apply them to the accrued interest, maintenance costs, insurance, taxes, and the deficiency until the expiration of the redemption period.

The trial court was correct in holding there was an assignment of rents in the instant case by the provision in the mortgage. We have examined the notice filed and served, and hold that it complies with the terms of PA 1953, No 210.

The only question remaining to be disposed of by this Court is whether or not the note under its terms limited the collection of rents provision in the mortgage. We think it did not. The language in the mortgage note was placed therein to limit the taking of a deficiency judgment which would create personal liability on the part of the mortgagors. No personal liability against the mortgagors is asked for or claimed. This provision does not in any way conflict with the assignment of rents provision of the mortgage. The mortgagee seeks only to obtain in-

come from the property during the pendency of the foreclosure.

The decree of the lower court is affirmed, with costs in favor of appellee.

DETHMERS, C. J., and CARR, KELLY, SMITH, BLACK, EDWARDS, and SOURIS, JJ., concurred.