**In the Matter of P.M.G. PROPERTIES, a Michigan corporation, Debtor.**

**Bankruptcy No. 85–02964–B.**

United States Bankruptcy Court, E.D. Michigan, S.D.

Dec. 5, 1985.

---

22. And see note 18, *supra.*

Snyder & Handler, P.C. by Wallace M. Handler, Birmingham, Mich., for debtor.

Honigman, Miller, Schwartz & Cohn by Sheldon S. Toll, Detroit, Mich., for Consolidated Capital Income Trust.

## MEMORANDUM OPINION

GEORGE BRODY, Chief Judge.

This is an action instituted pursuant to section 363(c)(2) of the Bankruptcy Code.

On November 4, 1983, Bonny Brook Associates (Bonny Brook), a Michigan general partnership, executed and delivered a promissory note in the amount of $2,363,-764.00 to Consolidated Capital Income Trust (Consolidated). To secure payment of the note, Bonny Brook executed and delivered to Consolidated a wraparound mortgage covering a 176-unit apartment complex, which contained an assignment of rents clause, and a separate conditional assignment of rents and leases.[1] Consolidat-

---

1. The pertinent provisions in the "All Inclusive (Wraparound) Mortgage, Assignment of Rents and Security Agreement" provide:

   12. Pursuant to Act 210, Michigan Public Acts of 1953, as amended, Mortgagor hereby assigns to Mortgagee all existing and future leases, rents, issues, profits, revenues, royalties, security and other deposits, rights and benefits of the Property (hereinafter collectively called the "Rents") for the payment of the indebtedness. Mortgagor grants to Mortgagee the right to (i) enter upon the Property for the purpose of collecting the Rents, (ii) let the Property, or any part thereof, and (iii) apply the Rents, after payment of the expenses of collection, if any, to any or all of the taxes, assessments and all other charges against the Property, insurance premiums pertaining to the Property or operation thereof, reduction of principal or payment of interest due under the Note, payment of all other advances made, pursuant to this Mortgage and the Note made by Mortgagee on behalf of or to Mortgagor, and payment of any expenses incurred in operating, maintaining or rebuilding the Property or expenses incurred for its betterment. Mortgagor shall be entitled to collect and receive the Rents until the occurrence of an Event of Default, as hereinafter defined, and, if applicable, after the expiration of the notice period provided for herein. Nothing in this Paragraph shall limit or modify the provisions of that certain Conditional Assignment of Rents and Leases from Mortgagor to Mortgagee delivered concurrently herewith, and to the extent of any conflict between the terms and provisions thereof and hereof, the terms and provisions of said Conditional Assignment of Rents and Leases shall prevail.

   20. As additional security for the payment of the indebtedness evidenced by the Note, including interest thereon, and the performance of all of Mortgagor's obligations hereunder or secured hereby, and under any other document executed simultaneously or in connection herewith, Mortgagor does hereby sell, assign, transfer and set over unto Mortgagee, pursuant to Act 210 of the Public Acts of Michigan of 1953, as amended, all the rents,

ed recorded both the mortgage and the separate assignment of rents with the Wayne County Register of Deeds on November 16, 1983. These agreements make Consolidated the assignee of the rents from the property upon their execution; however, both documents entitle Bonny Brook or its successor to collect and use the rents until the occurrence of a default as defined by the parties.[2]

Bonny Brook defaulted on its obligations under the mortgage, and on May 6, 1985, Consolidated served Bonny Brook with a notice of default and acceleration of the mortgage debt.[3] On June 27, 1985, P.M.G. Properties (PMG), a Michigan corporation, purchased the apartment complex and assumed the liabilities of Bonny Brook. In July of 1985, Consolidated sent a letter to PMG stating that it intended to hold PMG, Bonny Brook and the officers of Bonny Brook liable for an accounting of all rents since the default.

On September 5, 1985, PMG filed a chapter 11 bankruptcy case. Simultaneously with the filing of the chapter 11 petition, the debtor filed an application seeking to use the rents from the mortgaged premises as "cash collateral" pursuant to section 363 of the Bankruptcy Code. 11 U.S.C. § 363 (Supp. II 1984).[4] Section 363 provides that a debtor may use "cash collateral" if the entity that has an interest in the cash collateral consents, or if the court after notice and hearing authorizes such use. § 363(c)(2). Consolidated concedes that under this section, a debtor may use cash collateral provided the entity having an interest in the collateral is adequately protected. However, Consolidated contends that the debtor cannot invoke section 363 because the debtor had no interest in the rents when it filed the chapter 11 case.

The debtor and Consolidated agree that the question of whether the rents are or are not property of the debtor is to be determined by reference to state law, *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979); *Wolters Village, Ltd. v. Village Properties, Ltd. (In re Village Properties, Ltd.)*, 12 Bankr.Ct.Dec. (CRR) 370, 371 (5th Cir.1984); *In re Pine Lake Village Apartment Co.*, 17 Bankr.

profits and income under all leases or occupancy agreements or arrangements, however evidenced or denominated, upon or affecting the Property (including any extensions, amendments or renewal thereof), whether such rents, profits and income are due or are to become due, including all such leases in existence or coming into existence during the period this Mortgage is in effect. This assignment shall run with the land and be good and valid as against Mortgagor and those claiming by, under or through Mortgagor, from the date of recording of this Mortgage. This assignment shall continue to be operative during the foreclosure or any other proceedings taken to enforce this Mortgage. In the event of foreclosure sale which results in a deficiency, this assignment shall stand as security during the redemption period for the payment of such deficiency.

20.1. In the event of default as specified in Paragraph 18 above, Mortgagee shall be entitled to collect the rents and income from the Property, rent or lease the Property or any portion thereof upon such terms and for such time as it may deem best, maintain proceedings to recover rents or possession of the Property from any tenant or trespasser and apply the net proceeds of such rents and income to the following purposes: (1) payment of all of the costs and expenses incurred by Mortgagee in exercising its rights under this Paragraph; (2) payment of interest and principal due under the Note; (3) payment of all other sums secured hereby; and (4) payment of expenses of preserving the Property, including taxes and insurance premiums. Notwithstanding the foregoing, Mortgagee, in its sole discretion, may change the priorities set forth above for the application of the net proceeds of such rents and income.

2. Foreclosure proceedings were instituted but not completed prior to the filing of the petition in bankruptcy.

3. The amount of money owed on the mortgage on the date of default is in question.

4. "Cash collateral" is defined as:

Cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property subject to a security interest as provided under section 552(b) of this title, whether existing before or after the commencement of a case under this title. 11 U.S.C. § 363(a) (Supp. II 1984).

829, 8 Bankr.Ct.Dec. (CRR) 1110 (Bankr.S. D.N.Y.1982), and that Michigan law supplies the rule of decision. The parties also agree that Mich.Comp.Laws §§ 554.231 and 554.232 (1979) are the statutory provisions which govern the resolution of this controversy. They provide as follows:

554.231 Assignment of rents to accrue from leases as additional mortgage security.

Sec. 1. Hereafter, in or in connection with any mortgage on commercial or industrial property other than an apartment building with less than 6 apartments or any family residence to secure notes, bonds or other fixed obligations, it shall be lawful to assign the rents, or any portion thereof, under any oral or written leases upon the mortgaged property to the mortgagee, as security in addition to the property described in such mortgage. Such assignment of rents shall be binding upon such assignor only in the event of default in the terms and conditions of said mortgage, and shall operate against and be binding upon the occupiers of the premises from the date of filing by the mortgagee in the office of the register of deeds for the county in which the property is located of a notice of default in the terms and conditions of the mortgage and service of a copy of such notice upon the occupiers of the mortgaged premises.

554.232 Assignment of rents; validity.

Sec. 2. The assignment of rents, when so made, shall be a good and valid assignment of the rents under any lease or leases in existence or coming into existence during the period the mortgage is in effect, against the mortgagor or mortgagors or those claiming under or through them from the date of the recording of such mortgage, and shall be binding upon the tenant under the lease or leases upon service of a copy of the instrument under which the assignment is made, together with notice of default as required by section 1.

Relying on M.C.L. §§ 554.231 and 554.232, Consolidated contends that since it had properly recorded the mortgage, its service of the notice of default upon Bonny Brook on May 16, 1985, terminated Bonny Brook's interest in the rents and, therefore, the debtor acquired no interest in the rents when it purchased Bonny Brook's interest in the mortgaged premises. The debtor concedes that the mortgage and assignment of rents were properly recorded, and that Bonny Brook defaulted in the payment of the mortgage debt. The debtor acknowledges that if Bonny Brook's interest in the rents was terminated, it did not acquire any interest in the rents. However, the debtor maintains that section 554.231 requires a mortgagee to file a notice of default in the office of the register of deeds for the county in which the property is located and to serve copies of the notice upon the occupiers of the premises before it may terminate a mortgagor's interest in assigned rents. Since Consolidated admittedly did not do so, the debtor concludes that the rents are property of the debtor by virtue of its purchase of the apartment complex from Bonny Brook, and therefore property which it may use if it provides adequate protection to Consolidated.

There are no cases that deal with the question of when a mortgagee who holds an assignment of rents as additional security for the repayment of the mortgage debt becomes entitled to the rents under M.C.L. §§ 554.231 and 554.232. However, the Michigan Supreme Court's construction of a related statute offers guidance in resolving this controversy.

At least after 1843, a mortgagee in Michigan merely obtained a security interest in the mortgaged premises. *E.g., Dougherty v. Randall,* 3 Mich. 581 (1855); *Caruthers v. Humphrey,* 12 Mich. 270, 277 (1864); *Ladue v. Detroit and Milwaukee Railroad Co.,* 13 Mich. 380, 394 (1865); *Hazeltine v. Granger,* 44 Mich. 503, 505, 7 N.W. 74 (1880). The mortgagor retained legal title and all incidents of ownership until foreclosure and the expiration of the period of redemption. *Hazeltine v. Granger,* 44 Mich. at 505, 7 N.W. 74; *Wagar v. Stone,*

36 Mich. 364, 366 (1877). Assignment of rent provisions in mortgages were held invalid on the ground that they deprived the mortgagor of an incident of ownership before foreclosure proceedings were completed. *Wagar v. Stone*, 36 Mich. at 366; *Freedman v. Massachusetts Mutual Life Ins. Co.*, 81 F.2d 698, 699 (6th Cir.1936); *see also discussion in*, G. Osborne, *Handbook on the Law of Mortgages*, Second Edition, § 149, p. 247 (West 1970). The inability of the mortgagee to reach the rental income from mortgaged property upon default of the mortgagor permitted mortgagors in financial difficulty to "milk"[5] mortgaged property to the detriment of secured creditors, and undoubtedly discouraged the commitment of investment capital for real estate development. Comment, 31 Mich.L.Rev. 1124, 1126 (1933); G. Osborne, *Handbook on the Law of Mortgages*, § 158, p. 368 (West. 1951); Note, 46 Harv.L.Rev., *supra*, note 5.[6] The Michigan legislature partially addressed this problem in Act 228, Public Acts of 1925, (codified at M.C.L. §§ 554.211 and 554.212 (1979)). Comment, Mich.L.Rev., *supra*, at 1126. The pertinent provisions of this legislation provide as follows:

Sec. 1. Hereafter, in or in connection with any trust mortgage or deed of trust, to secure bonds or obligations issued or to be issued thereunder, it shall be lawful to assign the rents and profits of the property mortgaged to the trustee or trustees under the trust mortgage or deed of trust for the benefit of the bondholders and holders of the obligations issued or to be issued under the trust mortgage or deed of trust.

Sec. 2. The assignment of rents and profits, when so made, shall be a good and valid assignment of rents as against the mortgagor or mortgagors or those claiming under or through them from the date of the recording of the trust mortgage or deed of trust, and shall operate against and be binding upon the occupiers of the premises from the date of the filing by the trustee or trustees in the office of the register of deeds for the county in which the property is located of a notice of default in the terms and conditions of the trust mortgage or deed of trust, and service of a copy of such notice upon the occupiers of the mortgaged premises.

The "act [was] not perfectly drafted nor entirely complete." *Security Trust v. Sloman*, 252 Mich. 266, 273, 233 N.W. 216 (1930). However, its unmistakeable purpose was to change existing law by validating assignment of rent provisions for the benefit of a limited class of mortgagees. *Nusbaum v. Shapero*, 249 Mich. 252, 261, 228 N.W. 785 (1930). The Act enables certain designated mortgagees to take an assignment of rent for additional security for the payment of the mortgage debt and to enforce the assignment in the event of default by the mortgagor. *Union Guardian Trust Co. v. Lipsitz*, 268 Mich. 209, 217, 255 N.W. 766 (1934). The Act clearly states that such assignments are valid against "the mortgagor or mortgagors or those claiming under them from the date of recording of the mortgage." In addition, the Act states that such assignments are "binding upon the occupiers of the premises from the date of the filing by the trustee" of a notice of default with the register of deeds and service of a copy of the notice upon the occupiers. However, the Act does not state what steps, if any, the mortgagee must take to enforce an assignment and thereby divest the mortgagor of his interest in the assigned rents—the question raised in this controversy. This question has, however, been answered as to the 1925 Act by case law. The answer, simply stated, is that the mortgagee "is entitled to the rents upon default and performance of the statutory conditions." *Security Trust v. Sloman*, 252 Mich. at 274, 233 N.W. 216.

---

**5.** "Milking" refers to the practice of mortgagors who pocket the "rents and profits, and fail to provide the necessary repairs, or meet taxes, insurance, or amortization instalments." *Notes*, 46 Harv.L.Rev. 491 (1932–1933).

**6.** An exception was apparently made for waste. *Nusbaum v. Shapero*, 249 Mich. 252, 228 N.W. 785 (1930).

*See also, Abrin v. Equitable Trust Co.,* 271 Mich. 535, 261 N.W. 85 (1935).[7] The only statutory condition that the mortgagee must comply with is to record the mortgage. The mortgagee is not required to file a notice of default with the register of deeds and serve copies of the notice on the occupiers of the premises as a condition to enforcing the assignment against the mortgagor.[8] The requirements of filing and serving a notice of default upon the occupiers is intended solely for the benefit of the occupiers. *Detroit Trust Co. v. Detroit City Service Co.,* 262 Mich. 14, 42, 247 N.W. 76 (1933); *Giblin v. Detroit Trust Co.,* 270 Mich. 293, 298, 258 N.W. 635 (1935). Thus, under the Act of 1925, a mortgagor's interest in assigned rents is automatically terminated upon default.[9] The only question, therefore, is whether the result is the same under the 1953 Act. If it is, the rents of the mortgaged premises are not property of the debtor, and therefore not available for its use as cash collateral.

The 1953 Act gave "mortgagees holding mortgages on certain commercial or industrial property the same legal rights as were granted by the 1925 legislature to holders of trust mortgages." *Smith v. Mutual Benefit Insurance Co.,* 362 Mich. 114, 125, 106 N.W.2d 515 (1960). Since the Michigan Supreme Court in *Security Trust* and *Abrin* held that a trust mortgagee was automatically entitled to the rents upon default by the mortgagor, it follows therefore that assignment of rent clauses in mortgages of commercial and industrial property should likewise be held to operate automatically upon default as to the mortgagor unless the language of the 1953 Act commands a different result. There is no such command. In fact, the 1953 Act, unlike the Act of 1925, makes it clear that the mortgagor's interest in assigned rents is terminated automatically upon default by the mortgagee. Section 554.231 of the 1953 Act unambiguously spells out in separate clauses when the assignment becomes binding upon the mortgagor and when an assignment becomes binding upon the occupiers of the premises. The clause dealing with enforcing the assignment against the mortgagor states that the "assignment of rents shall be binding upon such assignor only in the event of default in the terms and conditions of said mortgage." The clause dealing with enforcing the assignment against the occupiers provides that the assignment "shall operate against and be binding upon the occupiers of the premises from the date of the filing by the mortgagee of a notice of default in the office of the register of deeds" and service of a copy of the notice on the occupiers of the mortgaged premises. There is a rational basis for treating the mortgagor and the occupiers differently. The mortgagor has personal knowledge of whether he is or is not in default. There is justification, therefore, for making the assignment automatic as to the mortgagor upon default. The occupiers are, however, in a different position. They have an obligation to pay the required rent to the lessor until they are legally directed to pay a different entity. It would be patently unjust to make the occupiers liable to a party with whom they

7. The right to collect the rents upon default continues even after sale until the deficiency is paid but ceases at the expiration of the period of redemption. *Security Trust Co. v. Sloman,* 252 Mich. 266, 233 N.W. 216 (1930).

8. A cursory reading of *Detroit Properties Corp. v. Detroit Hotel Corp.,* 258 Mich. 156, 242 N.W. 213 (1932), would seem to indicate that it supports the position adopted by the debtor. However, in Detroit Properties the receiver was also the occupier of the building. Detroit Properties is therefore clearly distinguishable. *See, Detroit Trust Co. v. Detroit City Service Co.,* 262 Mich. 14, 42, 247 N.W. 76 (1933); *Giblin v. Detroit*

*Trust Co.,* 270 Mich. 293, 298, 258 N.W. 635 (1935).

9. For a discussion of the law in other states, *see* Rep. of the Amer.Bar.Assoc.Comm. on Mort.Law and Prac., *Disposition of Rents and Profits After Mortgage Default, printed in,* 2 Real Prop.Probate and Trust J. 601 (Winter 1967) (survey of law of 33 states); and Rep. of Amer. Bar.Assoc.Comm. on Real Estate Financing, Real Prop. Div., *Disposition of Rents After Mortgage Default, printed in,* 2 Real Prop., Probate and Trust J. 835 (Winter 1982) (survey of law of 19 states).

have not dealt without some evidence that they are compelled to do so. Undoubtedly, it is for this reason that section 554.231 requires that the mortgagee file a notice of default and serve a copy of it upon the occupiers as a condition to receiving the rental payments directly from the occupiers. The requirement that the mortgagee file a notice upon the occupiers serves the same purpose in the 1953 Act as it did in the 1925 Act—namely, to protect the occupiers of the premises. *Detroit Trust Co. v. Detroit City Service Co.*, 262 Mich. at 42, 247 N.W. 76; *Giblin v. Detroit Trust Co.*, 270 Mich. at 298, 258 N.W. 635. This requirement does not condition the right of the mortgagee as against the mortgagor.

It may be, as the debtor contends, that until a notice of default is filed in the office of the register of deeds and copies served on the occupiers of the mortgaged premises, the mortgagee is not assured of receiving the rents. Undoubtedly, this is a problem that the mortgagee may have to address, in the event that the mortgagor does not voluntarily turn over the rents to the mortgagee. In such case, it may be necessary to "have the aid of the court, by appointment of receiver, to make collections, but this does not justify the addition, to those imposed by statute, of conditions to the exercise of the right." *Security Trust v. Sloman*, 252 Mich. at 273, 233 N.W. 216.

Moreover, "no harm or injustice [is] done to a mortgagor if, immediately upon default, all income and profits of an income-producing security [are] payable to the mortgagee so long as the mortgagee [is] responsible for an accounting of such income. The application of such income to the expenses of the security and then to the mortgage indebtedness [will] be of benefit to the mortgagor." 1967 Rep. of A.B.A. Comm. on Mort.Law & Prac., *supra*, note 9, at 602.

■ For the reasons stated, it is the conclusion of the court that a mortgagor's interest in rents made subject to an assignment of rents pursuant to the 1953 Michigan Act (M.C.L. §§ 554.231 and 554.232) is

automatically terminated upon default by the mortgagor. Therefore, Bonny Brook's interest in the rents terminated no later than May 6, 1985, when Consolidated served the notice of default upon Bonny Brook. Accordingly, the debtor did not acquire any interest in the rents from the mortgaged property. Therefore, the rents are not available for the use of the debtor as cash collateral. It is assumed, however, that Consolidated will apply the rent to preserve the mortgaged premises and to reduce the mortgage debt. *Cf., Smith v. Mutual Benefit Life Insurance Co.*, 362 Mich. at 120, 125, 106 N.W.2d 515.

An appropriate order is to be submitted.