### In re COVENTRY COMMONS ASSOCIATES, Debtor.

**Bankruptcy No. 91–07585–R.**

United States Bankruptcy Court,
E.D. Michigan, S.D.

Dec. 23, 1991.

Barbara Rom, Detroit, Mich., for debtor.

Michael Hammer, Detroit, Mich., for creditor.

SUPPLEMENTAL MEMORANDUM
OPINION

STEVEN W. RHODES, Bankruptcy
Judge.

This matter is before the Court on Coventry Commons' motion for determination of the status of rents and the use of cash collateral on an interim and final basis. The secured creditor, Travelers Insurance Company, filed a response and a hearing was held on September 25, 1991. At the conclusion of the hearing, the Court determined that Travelers was entitled to adequate protection of its property interest. This opinion supplements the decision given in open court at that time.

### I.

On February 4, 1988, The Nelson/Ross Partnership (Partnership) executed a Mortgage Note, a Mortgage and Security Agreement, and an Assignment of Rents and Leases in favor of Travelers. The assignment was recorded in the public records of Wayne County, Michigan. On January 1, 1991, Coventry Commons Associates became successor in interest to the Partnership. Later, Coventry Commons experienced financial difficulties and defaulted on its loan. On July 2, 1991, Coventry Commons filed a petition for relief under Chapter 11 of the Bankruptcy Code.

Coventry Commons currently generates monthly rents of approximately $71,000. The central issue raised by this motion involves the parties' respective rights and interests in those rents during the pendency of the bankruptcy.

The parties have spent considerable effort addressing the issue of whether the rents constitute cash collateral or non-cash collateral.[1] The Court does not agree that this is the issue.

■ Whether an asset constitutes cash collateral or not is only important to the determination of which party bears the bur-

den of petitioning the court to resolve any disputes regarding the debtor's use of the asset during the bankruptcy case. Under 11 U.S.C. § 363(c)(2), Coventry Commons cannot use cash collateral unless the creditor consents or the court authorizes it. Thus, it bears the burden of petitioning the Court regarding cash collateral. But under 11 U.S.C. § 363(c)(1), Coventry Commons can use non-cash collateral unless the court prohibits or conditions the use under 11 U.S.C. § 363(d) and (e). Thus, Travelers bears the burden of petitioning the Court regarding non-cash collateral. Nevertheless, whether the collateral is cash or non-cash collateral, the secured creditor is entitled to adequate protection. In this case, Coventry Commons has assumed the burden of bringing its dispute with Travelers to the Court for resolution. Thus, there is no real need to determine whether the rents are cash or non-cash collateral.[2]

The real issues involve identifying the nature and extent of Travelers' property interests in these circumstances, and then determining the adequate protection to which it is entitled.

### II.

■ The parties agree that state law determines whether, and to what extent, a party has a security interest. *Butner v. United States,* 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979); *Matter of Village Properties, Ltd.,* 723 F.2d 441, 443 (5th Cir.1984). The real property is located in Michigan, so Michigan law is controlling. The relevant state statute is M.C.L.A. §§ 554.231 and 554.232. Section 1 of § 554.231 provides that an assignment of rents is binding upon an assignor,

in the event of default in the terms and conditions of said mortgage, and shall operate against and be binding upon the occupiers of the premises from the date of filing by the mortgagee in the office of the register of deeds for the county in which the property is located of a notice

---

1. The parties do not contest the validity of Travelers' mortgage.

2. At the conclusion of the hearing, the Court indicated its preliminary view that the rents do

not constitute cash collateral. Upon further reflection, the Court now concludes that this determination was unnecessary, for the reasons indicated in the text.

of default in the terms and conditions of the mortgage and service of a copy of such notice upon the occupiers of the mortgaged premises.

Section 2 of § 554.232 provides:

The assignment of rents, when so made, shall be a good and valid assignment of the rents to accrue under any lease or leases in existence or coming into existence during the period the mortgage is in effect, against the mortgagor or mortgagors or those claiming under or through them from the date of the recording of such mortgage, and shall be binding upon the tenant under the lease or leases upon service of a copy of the instrument under which the assignment is made, together with notice of default as required by section 1.

Travelers recorded the assignment, and sent Coventry Commons a notice of default, but it did not record the notice of default, nor did it send copies of the notice to the tenants.

At issue is the interpretation of these state statutes, and the consequences of Travelers' failure to comply with each statutory condition before the bankruptcy petition was filed.

### A.

Coventry Commons argues that as a result of Travelers' failure to fully comply with the statutory requirements, it does not have a present interest in the rents. Instead, it argues that any security interest Travelers may have is of an inchoate nature; a right to receive rents after all of the statutory steps are completed.

In support, Coventry Commons relies on *In re Prichard Plaza Assocs. Ltd. Partnership*, 84 B.R. 289 (Bankr.D.Mass.1988). In that case, a bank had both a mortgage and an assignment of rents, and argued that "[s]ection 363 expressly includes rents in the definition of cash collateral; the Bank has an assignment of rents and leases; *ergo*, the Bank has a present right to rents which must be adequately protected as a condition of the Debtor's use of the property". *Id.* at 293. The court concluded that under applicable state law, a mort-

gagee must take possession of the property in order to have the right to collect rents, even with an assignment of rents in the mortgage. *Id.* at 297. Because the mortgagee was not in possession, the court determined that it did not have a present right to the rents, and that the security interest was inchoate. *Id.* at 301.

Similarly, in *In re Association Center Ltd. Partnership*, 87 B.R. 142 (Bankr. W.D.Wash.1988), the court was faced with the issue of whether the creditor had an interest in the rents. The applicable state statute provided that a mortgagee needed to foreclose on the real property before it could obtain possession. But the statute did not limit the trustee under a mortgage from entering into possession of the property for the purpose of collecting the rents and profits. The court interpreted this to mean that possession of the premises was necessary before the mortgagee could have a present security interest in the rents. Since the mortgagee was not in possession of the property, it had only an inchoate lien.

Coventry Commons also relies on *In re Bond*, 122 B.R. 39, 40 (D.Md.1990) (recordation of the rent assignment, alone, is not enough; to be perfected, the mortgagee needs to take some action to realize thereon prepetition); *In re 1301 Connecticut Ave. Assocs.*, 117 B.R. 2, 7 (Bankr. D.D.C.1990) (rents do not constitute cash collateral when the mortgagee is not in possession of the real estate, and possession is necessary for perfection); *In re Forest Ridge, II, Ltd. Partnership*, 116 B.R. 937, 947 (Bankr.W.D.N.C.1990) (security interest in rents not perfected because the creditor was not in possession of the real property).

Coventry Commons argues that although Travelers is *not* required to be in possession of the real property in order to collect the rents, Travelers is required to record the notice of default, and serve the notice upon all tenants. Coventry Commons argues that this case is similar to the cases cited above. Essentially, Coventry Commons argues that a mortgagee's interest in rents is not fully enforceable until all statu-

tory requirements are satisfied, whether they include possession, or recordation and service of the notice of default.

### B.

Travelers asserts that pursuant to state law, it has rights to the current rents *as against the mortgagor*, so its interest is fully enforceable. Travelers relies on the statutory language of M.C.L.A. §§ 554.231 and 554.232, which provide that an assignment, *when made*, is valid as against the mortgagor, and is binding on the mortgagor upon default.

In support of its theory, Travelers principally relies on *Matter of P.M.G. Properties*, 55 B.R. 864 (Bankr.E.D.Mich.1985). In that case, Judge Brody was faced with the same issue that is presented by this case. The mortgagee had served a notice of default upon the mortgagor, but had not filed the notice or served it upon the tenants. Judge Brody concluded that under M.C.L.A. §§ 554.231 and 554.232, a rent assignment is enforceable against a mortgagor upon the filing of the assignment by the mortgagee and the default of the mortgagor; the rent assignment would be enforceable against the tenants upon the filing and service of a notice of default. Judge Brody further held that the mortgagor's interest in the rents automatically terminated upon his default, and that therefore, the rents were not available for the debtor's use as cash collateral. Significantly, Judge Brody noted his assumption that the mortgagee would use the rents to preserve the mortgaged premises, and reduce the mortgage debt. *Id.* at 870. In any event, Judge Brody concluded that the rents were not property of the estate.

Travelers also relies on *Security Trust Co. v. Sloman*, 252 Mich. 266, 233 N.W. 216 (1930). In that case, the mortgagee foreclosed on the property and sold it. The mortgage contained a clause assigning the rents and profits. The foreclosure decree provided that the rents were sold with the premises. The issue was which party, the mortgagor, the mortgagee, or the purchaser, was entitled to the rents between the sale on foreclosure and redemption or expiration of the period of redemption. The case was decided before M.C.L.A. §§ 554.231 and 554.232 were enacted, but the statute then in effect was similar.[3] The court held that the mortgagee was entitled to the rents, and stated:

> Unlike statutes of some States, our act makes neither the taking of possession nor the appointment of a receiver a condition precedent to the collection of rents. It may be necessary in a given case to have the aid of the court, by appointment of receiver, to make collections, but this does not justify the addition, to those imposed by statute, of conditions to the exercise of the right.

*Sloman*, 252 Mich. at 273, 233 N.W. at 219.

### III.

### A.

The Court agrees with Coventry Commons that Travelers does not have a presently enforceable interest in receiving the current rents because it has not complied with each requirement under the applicable state statute. The Court further agrees that Travelers has only an inchoate interest in the rents—an interest in the right to receive the rents at some future undetermined time.

---

**3.** Act No. 228, Pub. Acts 1925 provided "SECTION 1. Hereafter, in or in connection with any trust mortgage or deed of trust, to secure bonds or obligations issued or to be issued thereunder, it shall be lawful to assign the rents and profits of the property mortgaged to the trustee ... under the trust mortgage or deed of trust for the benefit of the bondholders and holders of the obligations issued or to be issued under the trust mortgage or deed of trust.

"SEC. 2. The assignment of rents and profits, when so made, shall be a good and valid assignment of rents as against the ... mortgagors or those claiming under or through them from the date of the recording of the trust mortgage or deed of trust, and shall operate against and be binding upon the occupiers of the premises from the date of the filing by the trustee ... in the office of the register of deeds for the county in which the property is located of a notice of default in the terms and conditions of the trust mortgage or deed of trust, and service of a copy of such notice upon the occupiers of the mortgaged premises." *Sloman*, 252 Mich. at 272, 233 N.W. at 219.

For several reasons, this Court disagrees with the holding in *P.M.G. Properties* that under M.C.L.A. §§ 554.231 and 554.232, default alone is sufficient to enforce a rent assignment against the mortgagor. One difficulty with this holding is that it is inconsistent with several decisions of the Michigan Supreme Court on this issue. In *Sloman*, the Michigan Supreme Court specifically held that the mortgagee is entitled to the rents only upon default *and* performance of the statutory conditions. 252 Mich. at 274, 233 N.W. at 219. Moreover, *Sloman* was later quoted with approval in *Smith v. Mutual Benefit Life Ins. Co.*, 362 Mich. 114, 124, 106 N.W.2d 515, 520 (1960).[4]

*P.M.G. Properties* is also inconsistent with *Giblin v. Detroit Trust Co.*, 270 Mich. 293, 258 N.W. 635 (1935). In that case, the trustee of a trust mortgage was in possession of the real property, with the consent of the owner. After the mortgagor defaulted, the owner argued that the trustee, as a condition precedent to its right to remain in possession, would have to file a notice of default and serve a copy of the notice upon the occupiers of the mortgaged premises, under the provisions of Act No. 228.[5] The Michigan Supreme Court held that this was not required, but stated:

> Had not possession voluntarily been granted to the trustee by the owner in the instant case, or had any prejudice to the rights of the occupiers of the premises been involved, it would have been necessary that the trustee file notice of default and serve it on the occupiers of the premises.

270 Mich. at 299, 258 N.W. at 639.

*See also Detroit Properties Corp. v. Detroit Hotel Co.*, 258 Mich. 156, 242 N.W. 213 (1932).[6]

A second difficulty with *P.M.G. Properties,* noted in *In re Bryn Athyn Investors, Ltd.*, 69 B.R. 452, 457 n. 5 (Bankr. E.D.N.C.1987), is that the decision does not consider the changes in the parties' rights resulting from the bankruptcy filing, as for example, described in *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). *Bryn Athyn Investors* clearly and persuasively explains that in the present context, *Whiting Pools* dictates that so long as the debtor still has an interest in the rents, and can provide adequate protection, the debtor is entitled to use the rents to reorganize. In this case, it is clear that the debtor still has an interest in the rents; if for example, the mortgage is paid and discharged, the assignment of rents to Travelers will be void.[7] *See Bryn Athyn Investors*, 69 B.R. at 457. *See also In re Grant Assocs.*, No. M-47 (RJW), 1991 WL 21228, 1991 U.S.Dist. LEXIS 1245 (S.D.N.Y. Feb. 5, 1991).

Even *P.M.G. Properties* itself found that the debtor had an interest in the rents; Judge Brody specifically noted his assumption that the mortgagee would use the rents to preserve the mortgaged premises and to reduce the mortgage debt. 55 B.R. at 870, citing *Smith*, 362 Mich. at 120, 125, 106 N.W.2d at 518–519. It is hard to find a basis for this assumption if indeed the rents were the exclusive property of the mortgagee and the debtor had *no* interest in them. Presumably, if the rents are the exclusive property of the mortgagee, it can do with the rents as it wishes.

### B.

■ Travelers does, nevertheless, have an interest in rents. It is a perfected security interest in Coventry Commons' right

---

**4.** As noted earlier, *Sloman* applied an earlier, but similar statute, Act No. 228, *supra* note 3. *Smith* applied the statute currently applicable, M.C.L.A. §§ 554.231 and 554.232.

**5.** Act No. 228, Pub. Acts 1925, *supra* note 3.

**6.** *See also* 1 *John G. Cameron, Jr., Michigan Real Property Law: Principles and Commentary* 635 (1985), which states, "An assignment of rents becomes effective only if the mortgagor de-

faults, and operates when the mortgagee records a notice of default and serves a copy of it on the tenants."

**7.** Indeed, the *Whiting Pool* argument is so powerful that it would likely preserve the rents for the debtor's use, even if Travelers had completed all of the statutory requirements to enforce its rent assignment, and had already received rents from the tenants.

to receive future rents in the time period from the time of service and filing of the default, until the period of redemption on the foreclosure expires or until the property is redeemed. *See Sloman*, 252 Mich. at 274, 233 N.W. at 219. Travelers is entitled to adequate protection of that interest, under 11 U.S.C. § 363(e).

In order to assure that Travelers' right to receive future rents is adequately protected, Coventry Commons must maintain the property and pay the expenses of the property. Protecting the property itself is the best way to protect Travelers' rights in future rents.[8]

The Court has requested counsel to prepare an appropriate adequate protection order.

---

**8.** Most interestingly, both parties have agreed throughout these proceedings that the current rents should be used to maintain the property. The real question is which party is entitled to use the rent proceeds in excess of these expenses. In reality, Coventry Commons wants to use these funds to pay its attorneys to help it reorganize. Travelers has other intentions. Thus, the true controversy—whether the debtor will have any funds to pay its attorneys—is now revealed.