**IN RE: TOWN CENTER FLATS, LLC, Debtor.**

**Case No. 15–41307–wsd**

United States Bankruptcy Court, E.D. Michigan, Southern Division.

Signed May 8, 2015

Robert N. Bassel, Clinton, MI, for Debtor.

## *OPINION DENYING MOTION FOR AN ORDER CONFIRMING THAT NO STAY IS IN EFFECT OR IN THE ALTERNATIVE TO PROHIBIT USE OF RENTS AND CASH COLLATERAL*

Walter Shapero, United States Bankruptcy Judge

ECP Commercial II LLC ("ECP") filed this Motion for an Order Confirming that no Stay is in Effect or in the Alternative to Prohibit Use of Rents and Cash Collateral. Debtor filed an objection. The Court conducted a hearing on April 9, 2015, and took

---

the matter under advisement. For the reasons set forth below, the motion is denied.

## BACKGROUND

Debtor owns a residential townhouse and apartment complex in Shelby Township, MI, known as Town Center Flats. ECP is the holder of a mortgage and assignment of rents executed by Debtor to secure payment of its debt to ECP.[1]

Debtor defaulted on its payment obligations to ECP on December 31, 2013. On December 22, 2014, ECP attempted to exercise its rights to collect rents directly from the tenants of Town Center Flats. ECP sent a notice of default and payment instructions to the tenants. The notice was properly filed with the Macomb County Register of Deeds. Debtor failed to remit any rents to ECP.

On January 23, 2015, ECP filed a complaint in Macomb County Circuit Court against Debtor asserting breach of contract, foreclosure on the mortgage and appointment of a receiver. Shortly thereafter, on January 31, 2015, Debtor filed for Chapter 11 relief.

In support of its motion, ECP argues that pursuant to the assignment of rents provision and MCL § 554.231, the rents belong to ECP and are not property of the estate. Therefore, ECP contends, the rents are not subject to the automatic stay. ECP relies on the decision in *In re Madison Heights Grp., LLC,* 506 B.R. 734 (Bankr.E.D.Mich.2013), *recon. denied,* 506 B.R. 734 (Bankr.E.D.Mich.2014), in support of its position. Even if the Court finds that the rents could be considered property of the estate, ECP argues that the rents constitute ECP's cash collateral

and therefore must be segregated and accounted for by Debtor.

Debtor relies on this Court's decision in *In re Newberry Square, Inc.,* 175 B.R. 910 (Bank.E.D.Mich.1994), and asserts that the parties intended the assignment of rents provision to provide additional security to ECP, not to terminate Debtor's interest in those rents.

## DISCUSSION

■ The determination of whether the rents at issue constitute property of the estate must be decided by reference to applicable state law. *Butner v. U.S.,* 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979).

Mich. Comp. Laws §§ 554.231 and 554.232 provide:

554.231 Assignment of rents to accrue from leases as additional mortgage security.

Sec. 1. Hereafter, in or in connection with any mortgage on commercial or industrial property other than an apartment with less than 6 apartments or any family residence to secure notes, bonds or other fixed obligations, it shall be lawful to assign the rents, or any portion thereof, under any oral or written leases upon the mortgaged property to the mortgagee, as security in addition to the property described in such mortgage. Such assignment of rents shall be binding upon such assignor only in the event of default in the terms and conditions of said mortgage, and shall operate against and be binding upon the occupiers of the premises from the date of filing by the mortgagee in the office of the register of deeds for the county in

---

1. The original loan agreement was between Debtor and KeyBank. KeyBank assigned its rights to ECP on September 30, 2013.

which the property is located of a notice of default in the terms and conditions of the mortgage and service of a copy of such notice upon the occupiers of the mortgaged premises.

554.232 Assignment of rents; validity.

Sec. 2. The assignment of rents, when so made, shall be a good and valid assignment of the rents under any lease or leases in existence or coming into existence during the period the mortgage is in effect, against the mortgagor or mortgagors or those claiming under or through them from the date of the recording of such mortgage, and shall be binding on the tenant under the lease or leases upon service of a copy of the instrument under which the assignment is made, together with notice of default as required by section 1.

Mich. Comp. Laws §§ 554.231 and 554.232.

These statutes authorize the assignment of rents, but do not address or define the impact, meaning or effect of an assignment on the mortgagor's interest in those rents.

In *Newberry Square,* 175 B.R. 910, this Court essentially held that an assignment of rents gave the creditor a security interest in the rents, not ownership of the rents. Therefore, the debtor's interest in the rents was not terminated by pre-petition actions effectuating the assignment and was property of the estate. The Court based its conclusion on the following rationale: (1) the language of 11 U.S.C. §§ 363, 541 and 552(b) contemplate rents as property of estate; (2) it was clear from the assignment document itself that it was intended for security; (3) the debtor retained a substantial interest in the rents because they had to be applied to the costs of maintaining the property, with any surplus applied to the debt; (4) the debtor's leases were themselves property rights; and (5) assigned rents are akin to accounts

receivable, which are property of estate, and there is no logical or conceptual difference between assigned rents and accounts receivable. *Id.* at 911–12. Finally, the Court found support in *U.S. v. Whiting Pools, Inc.,* 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983), wherein the Supreme Court held that property seized by the IRS pre-petition to satisfy pre-petition liens remains property of the estate.

The Court acknowledged the holding in *Otis Elevator Co. v. Mid–America Realty Investors and Newark Fireman's Ins. Co.,* 206 Mich.App. 710, 522 N.W.2d 732 (1994), as essentially reflecting state law on the subject. There, Otis Elevator became a judgment creditor of Mid–American Realty and attempted to garnish its rents. However, Fireman's Insurance Co. held a valid assignment of those rents. The court did say that, "Otis could not garnish Mid–America's interest in the rents because Mid–America no longer had a valid property interest in the rents subsequent to its default on its mortgage with Fireman's." *Id.* at 734.

In concluding that the holding in *Otis Elevator* did not require a different result in *Newberry,* this Court stated in *Newberry :*

(1) the situation in Otis concerned a determination of the relative priority rights of two creditors of the mortgagee, and did not determine the rights as between the mortgagor and mortgagee; in that context, the Court of Appeals was probably right at least in the result that it reached;

(2) it was unnecessary for the state court to draw any conclusions as to what rights, if any, the mortgagor retained when deciding the priorities as between the two creditors; the determination of the mortgagor's rights was only necessary for determining that, whatever those rights were, they were both sub-

ject to the assignment of rents and were garnishable—the real and only question being the relative priorities between the rent assignee and the garnisheeing creditor; and

(3) while bankruptcy courts do look to state law when determining what constitutes "property" under § 547, the requirement that bankruptcy courts look to state law when defining "property" is tempered by the presence of controlling federal law; if federal law, such as where the statutory language of the Code, indicates a broader policy or construction than what state law might otherwise indicate, the question of what is "property" of the estate thus ultimately becomes one of federal law. *See Barnhill v. Johnson* [503 U.S. 393], 112 S.Ct. 1386, [118 L.Ed.2d 39] (1992); *Board of Trade of Chicago v. Johnson*, 264 U.S. 1, [44 S.Ct. 232, 68 L.Ed. 533] (1924). In this Court's view the provisions of the Code cited and analyzed by this Court constitute controlling federal law on the subject.

*Newberry*, 175 B.R. at 914–15.

Although it has been 20 years since the Court decided *Newberry*, it still believes in its soundness and does not believe there are any subsequent events which might cause it to change its mind.

Furthermore, additional support for the Court's conclusion can be found in MCL § 554.231. The title of P.A.1953, No. 210, Eff. Oct. 2 itself is "AN ACT to authorize the assignment of rents to accrue from existing leases as additional security to mortgage obligations." The ensuing prefatory description of the language of § 554.231 is set forth as "Assignment of rents to accrue from leases as additional mortgage security." The statute permits the assignment to be "in or in connection with any mortgage," thus, a separate assignment instrument is not required. The statute also states that "Such assignment of rents shall be binding upon such assignor only in the event of default in the terms and conditions of said mortgage." All of the foregoing reinforces the concept that an assignment of rents needs to be simply seen, no less and no more, as additional collateral for a secured mortgage debt, and treated herein as property of the bankruptcy estate, like the other collateral and property in which Debtor retains an interest.

Prior to its enactment in 1953, it was said of § 554.231:

Act 62 of the Public Acts of 1843 .... had the effect of preventing the mortgagee from obtaining rents and income from the property occupied by the mortgagor until expiration of the period of redemption. In 1925 the legislature made possible the elimination of the effect of the 1843 statute in the case of property subject to trust mortgage.... The legislature, by Act 210 of the Public Acts of 1953, has now made possible the elimination of the effect of the 1843 statute in the case of mortgages on commercial or industrial property (with some exceptions shown in the statute) so that assignment of rents may be made and a receiver appointed to collect the rents in event of default.

*Smith v. Mut. Ben. Life Ins. Co.*, 362 Mich. 114, 106 N.W.2d 515, 518–19 (1960) (footnotes omitted).

"The language of the 1953 act and the 1925 act are virtually the same. The legislature in 1953 had in mind giving the mortgagees holding mortgages on certain commercial or industrial property the same legal rights as were granted by the 1925 legislature to the holders of trust mortgages." *Id.* at 520.

With respect to the 1925 act, the Michigan Supreme Court stated:

The act is not perfectly drafted nor entirely complete. It leaves something to be read into it by construction. Thus, it does not state the obviously intended requirement that rents collected by the trustee shall be applied on the mortgage debt. But it is workable and its purpose is unmistakable.

Its outstanding features are:

(1) It was designed for the benefit of holders of obligations under trust mortgages, usually the general public who rely on others for financial guidance, and is to be given effect to that end.

(2) While the right to collect rents is as security, it provides for their "assignment," not their "mortgage," as the term is used in connection with other property. No foreclosure and sale are required to exercise the right. The assignment may become effective at once on default and in advance of proceedings for foreclosure.

(3) The rents are not part of the mortgaged premises, nor do they necessarily run with them. The assignment is by way of additional security. It may, but need not, be made in the mortgage. It may be by separate writing at or after the execution of the mortgage.

(4) The act provides a new remedy not before enjoyed. *Nusbaum v. Shapero*, 249 Mich. 252, 228 N.W. 785. It does not purport to make any change in the general mortgage law by modifying the method, conditions, or effect of foreclosure, sale, redemption, or possession before or after sale. Only such changes in the mortgage relation can be fairly read into the law as are essential to give it the proper effect.

*Sec. Trust Co. v. Sloman*, 252 Mich. 266, 233 N.W. 216, 219 (1930)

The statute does not state or indicate that an assignment of rents extinguishes all rights of the mortgagor in the assigned rents. What it does is allow for the assignment of rents as additional security.

Further elaborating that point, Black's Law Dictionary defines the term "security" as "Collateral given or pledged to guarantee the fulfillment of an obligation; esp., the assurance that a creditor will be repaid (usu. with interest) any money or credit extended to a debtor." Black's Law Dictionary (10th ed.2014). As noted, the statute providing for assignments of rent references such being for "security." In the Court's view that word's ascribed meaning, as rules of statutory construction teach us, should be considered to have meaning and that meaning is its commonly held definition. In doing so here, that also requires taking note of its reference and analogy to collateral to "guarantee the fulfillment of an obligation." That suggests both the term's nature and its limits. In the context of the status of this and any similar Chapter 11 proceeding, the term and considerations of eventual payment of the principal obligation, and when and how the security for its performance will be exercisable remain very much in play, and may very well continue to be so depending on whether a plan can be confirmed and if so what that plan provides for in the event of default.

The Court acknowledges the split in authority and, specifically, Judge Tucker's recent decision in *In re Madison Heights Group, LLC*. There, the court relied primarily on *In re Woodmere Investors Ltd. P'ship*, 178 B.R. 346 (Bankr.S.D.N.Y.1995). *Woodmere* rejected *Newberry* and relied on *In re Mt. Pleasant Ltd. P'ship*, 144 B.R. 727 (Bankr.W.D.Mich.1992), with which, as noted in *Newberry*, this Court disagrees.

One of the factors this Court considered in *Newberry* was the intent of the parties as evidenced by the language of the as-

signment. The "Assignment of Leases and Rents" agreement executed by the parties here states that the "Assignor is desirous of further securing to Assignee the performance of the terms, covenants and agreements hereof and of the Note, the Mortgage and the Loan Documents." *See* ECP's Motion, Exh. 6d at 1. The agreement also states that the assignment terminates upon satisfaction of the mortgage. *See* ECP's Motion, Exh. 6d at 6, ¶ 15. These facts support a finding that the assignment was intended as additional security.

A number of courts have likewise considered the intent of the parties and the language of the relevant documents in finding that an assignment of rents does not effectuate a property transfer. In *In re Senior Housing Alternatives, Inc.*, 444 B.R. 386 (Bankr.E.D.Tenn.2011), the court held that an assignment of rents had the effect of creating a security interest rather than an absolute conveyance of all rights in the rents because it was given to secure payment of the debt and was void upon satisfaction of the debt. *Id.* at 395–96.

Similarly, in *In re Village Green I, GP*, 435 B.R. 525, 531 (Bankr.W.D.Tenn.2010), the court found assigned rents to be property of the estate, relying primarily on the language providing for the release of the instrument setting forth the rent assignment upon satisfaction of the debt. *See also In re Buttermilk Towne Ctr., LLC*, 442 B.R. 558 (6th Cir. BAP 2010) (holding that assignment of rents had effect of granting security interest, based in part on termination of assignment upon satisfaction of debt); *In re Amaravathi Ltd. P'ship*, 416 B.R. 618, 633–37 (Bankr. S.D.Tex.2009) (if effect of transaction is that borrower retains an interest in rents, then transfer is not truly absolute); *In re 5877 Poplar, L.P.*, 268 B.R. 140, 149 (Bankr.W.D.Tenn.2001) (noting signifi-

cance of provision requiring release of security instrument upon satisfaction of debt, concluding that "the Debtor did not assign its rights to the rents and revenues ad infinitum and retained some interest in the rents."); *Lyons v. Federal Sav. Bank (In re Lyons)*, 193 B.R. 637, 648 (Bankr. D.Mass.1996) ("The fact that the assignments are conditioned upon default and will terminate upon satisfaction of the debt indicates that they are merely additional security for the loan, and not an absolute transfer of the Debtors' interest in the rents to the Bank."); *In re May,* 169 B.R. 462, 470–71 (Bankr.S.D.Ga.1994) ("[A]n assignment, which is characterized as 'absolute', is not absolute in the sense that it totally divests a grantor of any and all interest in the rents. The grantor retains an equitable interest in the rents, and whether the interest is depicted as a 'reversionary interest', a 'right of redemption' or the like, it is an interest which becomes property of the bankruptcy estate. . . .").

In this Court's view, the purpose, meaning and intent of the applicable statutes were to put rents conceptually and in basically the same security position as the collateral specified in the associated mortgage. That there may be, and of necessity are, differing procedures required to properly and effectively exercise the secured party's rights under each a rent assignment and a mortgage, (and possibly also a related separate security agreement and financing statement covering certain other assets incident to the financing involved owned by the Mortgagor), does not in this Court's view alter its basic substantive rationale as expressed in *Newberry*. As was alluded to in *Newberry,* the issue arises in the context of a Chapter 11 proceeding which contemplates a reorganization and continuation of the Debtor's business. It strains reason and practicality in that context, to conclude that an assignment of rents, even one procedurally effectuated

**182**

pre-petition, completely removes the possibility that those rents can be utilized incident to proposing and effectuating a Chapter 11 plan.

Rents in a Chapter 11 real estate case conceptually are, and for the purpose of a Chapter 11 reorganization ought to be, treated the same as the constantly regenerating receivables in a retail or non-real estate commercial business case. In the latter type of case where you have an all asset mortgage instrument which effectively itself includes receivables as collateral, would pre-petition notification of account receivable obligors preclude those or later receivables payable by those same obligors from being considered as assets of the bankruptcy estate useable in the reorganization? Unlikely.

In a real estate case like this one what, and all, you have is what should be considered as an inseparable combination of the realty and its associated tangible personalty, coupled with the rentals received from tenants or lessees. As the old song says about love and marriage, "you can't have one without the other." That, together with the other reasoning advanced in *Newberry,* militates against ECP's position.

Accordingly, the Court reaffirms its views in *Newberry* and concludes that the rents at issue are property of the bankruptcy estate and constitute cash collateral under § 363(a).

Debtor shall present an appropriate order.