RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 17a0099p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

IN RE: TOWN CENTER FLATS, LLC,

*Debtor.*

_____

TOWN CENTER FLATS, LLC,

*Appellant,*

*v.*

ECP COMMERCIAL II LLC,

*Appellee.*

No. 16-1812

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:15-cv-11881—Bernard A. Friedman, District Judge.

United States Bankruptcy Court for the
Eastern District of Michigan at Detroit.
No. 15-41307—Walter Shapero, Judge.

Argued:  March 8, 2017

Decided and Filed:  May 2, 2017

Before:  CLAY, GIBBONS, and STRANCH, Circuit Judges.

_____

## COUNSEL

**ARGUED:**  Robert N. Bassel, Clinton, Michigan, for Appellant.  Jeremy S. Friedberg, LEITESS FRIEDBERG, P.C., Baltimore, Maryland, for Appellee.  **ON BRIEF:**  Robert N. Bassel, Clinton, Michigan, for Appellant.  Jeremy S. Friedberg, LEITESS FRIEDBERG, P.C., Baltimore, Maryland, for Appellee.

---

**OPINION**

---

JANE B. STRANCH, Circuit Judge. This bankruptcy case centers on property rights in an assigned stream of rents. The extent of a debtor's rights in those rents under Michigan law determines whether the rents are properly included in a Chapter 11 bankruptcy estate. The bankruptcy court decided that an assignment of rents creates a security interest, but does not change ownership, and held that an assignor continues to have a property interest in the rents. Accordingly, the bankruptcy court included the rents in the bankruptcy estate. The district court vacated the order of the bankruptcy court, finding that an assignment of rents is a transfer of ownership under Michigan law and thus the rents should not be included in the bankruptcy estate. Agreeing with the district court's reasoning, we hold that the debtor, Town Center Flats, LLC, did not retain sufficient rights in the assigned rents under Michigan law for those rents to be included in the bankruptcy estate. We therefore **reverse** the order of the bankruptcy court.

## I. BACKGROUND

### A.      Factual History

The parties do not dispute the underlying facts. Debtor Town Center Flats, LLC owns a 53-unit residential complex in Shelby Township, Michigan. Town Center financed construction of the building with a $5.3 million loan from KeyBank that was later assigned to ECP Commercial II LLC. The loan was secured with a mortgage and an agreement to assign rents to the creditor in the event of default. In the agreement to assign rents, Town Center "irrevocably, absolutely and unconditionally [agreed to] transfer, sell, assign, pledge and convey to Assignee, its successors and assigns, all of the right, title and interest of [Town Center] in . . . income of every nature of and from the Project, including, without limitation, minimum rents [and] additional rents . . . ." The agreement purported to be a "present, absolute and executed grant of the powers herein granted to Assignee," while simultaneously granting a license to Town Center to collect and retain rents until an event of default, at which point the license would

"automatically terminate without notice to [Town Center]." Rents from the residential complex are Town Center's only source of income.

On December 31, 2013, Town Center defaulted on its obligation to repay the loan. On December 22, 2014, ECP sent a notice of default and a request for the payment of rents to all known tenants of the Town Center property. The notice complied with the terms of the agreement and with Mich. Comp. Laws § 554.231, which allows creditors to collect rents directly from tenants of certain mortgaged properties. The following day, ECP recorded the notice documents in Macomb County, Michigan, completing the last step required by the statute to make the assignment of rents binding against both Town Center and the tenants of the property.

On January 23, 2015, ECP filed a complaint in the Circuit Court for Macomb County alleging breach of contract, initiating foreclosure on the mortgage, and requesting appointment of a receiver to take possession of the Town Center property. Approximately one week later on January 31, 2015, Town Center filed for Chapter 11 bankruptcy relief. At the time Town Center filed its petition, Town Center owed ECP $5,329,329 plus attorney's fees and costs. The parties have reached an interim agreement to allow Town Center to continue to collect rents from the tenants of the complex, with $15,000 per month used to pay down the debt to ECP and the remainder of the rents used for authorized expenses.

## B.    Procedural History

Town Center's bankruptcy petition resulted in an automatic stay on the state-court case filed by ECP. *See* 11 U.S.C. § 362(a) (placing a stay on most judicial actions involving the debtor when a bankruptcy petition is filed). In February 2015, ECP filed a motion to prohibit Town Center from using rents collected after the petition was filed. Town Center opposed the motion and pointed out to the bankruptcy court that the company would have no income to work with in its Chapter 11 reorganization plan if the rents were not part of the bankruptcy estate. The bankruptcy court agreed with Town Center and denied ECP's motion. The bankruptcy court determined that the assigned rents would qualify as cash collateral in the bankruptcy estate,

meaning, under Chapter 11, that Town Center must provide "adequate protection" to ECP before using the cash. *In re Buttermilk Towne Ctr., LLC*, 442 B.R. 558, 565 (B.A.P. 6th Cir. 2010).

ECP appealed to the district court and argued that Michigan law established a transfer of ownership in the assigned rents from Town Center to ECP. The district court agreed with ECP and vacated the bankruptcy court's decision. Town Center appealed to this court. ECP moved to dismiss the appeal for lack of jurisdiction, arguing that the decisions of the lower courts were not final because the bankruptcy case is still open. A motions panel of this court decided that additional proceedings in the bankruptcy court would be purely ministerial and that we have jurisdiction over an appeal from a final order. We therefore reach the merits to decide whether the assigned rents are property of ECP or are part of Town Center's bankruptcy estate.

## II. ANALYSIS

### A.    Standard of Review and Applicable Law

This court has jurisdiction under 28 U.S.C. § 158(d)(1) over appeals of final orders from district courts that have reviewed bankruptcy court decisions. We review the decision of the bankruptcy court "rather than the intermediate decision of the district court." *Lowenbraun v. Canary* (*In re Lowenbraun*), 453 F.3d 314, 319 (6th Cir. 2006). Findings of fact are reviewed for clear error and conclusions of law are reviewed de novo. *Id.*

Property rights are determined under the law of the state in which the real property is located, which in this case is Michigan. Using state law to define rights promotes the "[u]niform treatment of property interests by both state and federal courts," which serves to "reduce uncertainty, to discourage forum shopping, and to prevent a party from receiving 'a windfall merely by reason of the happenstance of bankruptcy.'" *Butner v. United States*, 440 U.S. 48, 55 (1979) (quoting *Lewis v. Mfrs. Nat'l Bank of Detroit*, 364 U.S. 603, 609 (1961)). When the highest court of a state has not spoken directly on an issue, this court must make an *Erie* guess as to how that court would resolve it and may look to decisions of intermediate state appellate courts as persuasive authority. *Conlin v. Mortg. Elec. Registration Sys., Inc.*, 714 F.3d 355, 358-59 (6th Cir. 2013); *see also Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Once property rights have been determined under state law, "federal bankruptcy law dictates to what extent that

interest is property of the estate." *Bavely v. United States (In re Terwillinger's Catering Plus, Inc.)*, 911 F.2d 1168, 1172 (6th Cir. 1990) (quoting *N.S. Garrott & Sons v. Union Planters Nat'l Bank of Memphis (In re N.S. Garrott & Sons)*, 772 F.2d 462, 466 (8th Cir. 1985)).

We begin by analyzing the extent of property rights held by the assignor and assignee of rents under Michigan law. We then answer the ultimate question—whether the rights retained by the assignor are sufficient for those rents to be included in the bankruptcy estate.

**B.    Assignment of Rents in Michigan**

As with many issues of property rights, the history of the legal doctrine sheds light on the traditional legal rule, which serves to illuminate more recent developments. The traditional rule in Michigan, created by statute in 1843, was that an assignment of rents was unenforceable because it would interfere with a mortgagor's right of redemption. *Smith v. Mut. Ben. Life Ins. Co.*, 106 N.W.2d 515, 518 (Mich. 1960). The default rule in Michigan is therefore that an assignment of rents is unenforceable. *Id*. A 1925 statute subsequently created a right to assign rents for properties subject to trust mortgages. *Id*. at 518-19. The Michigan Supreme Court determined that the statute made the "[c]ollection of rents . . . not merely an incident to the right of possession of the land, but . . . a distinct remedy and additional security." *Security Trust Co. v. Sloman*, 233 N.W. 216, 219 (Mich. 1930). Central to this case, a 1953 statute titled "Assignment of Rents to Accrue from Leases as Additional Mortgage Security" extended the ability to assign rents to additional categories of property:

> Hereafter, in or in connection with any mortgage on commercial or industrial property . . . it shall be lawful to assign the rents, or any portion thereof, under any oral or written leases upon the mortgaged property to the mortgagee, as security in addition to the property described in such mortgage. Such assignment of rents shall be binding upon such assignor only in the event of default in the terms and conditions of said mortgage, and shall operate against and be binding upon the occupiers of the premises from the date of filing by the mortgagee in the office of the register of deeds for the county in which the property is located of a notice of default in the terms and conditions of the mortgage and service of a copy of such notice upon the occupiers of the mortgaged premises.

Mich. Comp. Laws § 554.231.

The Michigan statute also contains a provision about the validity of the assignment:

> The assignment of rents, when so made, shall be a good and valid assignment of the rents to accrue under any lease or leases in existence or coming into existence during the period the mortgage is in effect, against the mortgagor or mortgagors or those claiming under or through them from the date of the recording of such mortgage, and shall be binding upon the tenant under the lease or leases upon service of a copy of the instrument under which the assignment is made, together with notice of default as required by [the above section].

*Id.* § 554.232.

### 1.    Assignment of Rents

Michigan courts generally discuss assignments of rents under § 554.231 as ownership transfers. The Michigan Supreme Court held that this statute puts the assignee "in the shoes of the mortgagor until the debt is paid, with all his rights to the rents and profits as long as he, under the general law of mortgages, could enjoy them." *Smith*, 106 N.W.2d at 520 (quoting *Sloman*, 233 N.W. at 220). In 1994, the Michigan Court of Appeals held that a prior-perfected interest in assigned rents had priority over an interest held by a judgment creditor who sought to garnish rents. *Otis Elevator Co. v. Mid-America Realty Investors*, 522 N.W.2d 732, 733 (Mich. Ct. App. 1994). The judgment creditor "could not garnish rents because [the assignor] no longer had an interest in the rents." *Id.* Once an assignee has: 1) entered into an agreement to assign rents; 2) recorded that agreement; and 3) default has occurred, then the assignee's rights "are perfected and binding against the assignor" and the assignor "no longer ha[s] a valid property interest in the rents." *Id.* at 734. The assignor has the legal right to collect the rents directly from tenants once notice of the default has been filed in the county's register and served on the tenants. Mich. Comp. Laws §§ 554.231, 554.232. Michigan courts have generally treated the assignment of rents as a transfer of ownership once the agreement has been completed and recorded and a default has occurred. *See Otis Elevator*, 522 N.W.2d at 733 (stating "once [the assignee] recorded the mortgage and the mortgagor's default, the assignment of rents was valid and enforceable as between the mortgagor . . . and the mortgagee."). *Otis Elevator* implies that this should be regarded as a transfer of all rights in the rents. 522 N.W.2d at 733 (finding that the assignor "no longer had an interest in the rents."). A more recent decision of the Michigan Court of Appeals confirmed that the assignor loses "any right to collect the rents" after assignee has

perfected its rights following an event of default. *Ashley Livonia A&P, L.L.C. v. Great Atl. & Pac. Tea Co., Inc.*, No. 319288, 2015 WL 3757546, at *5 (Mich. Ct. App. June 16, 2015) (per curiam).[1] We therefore predict, under *Erie v. Tompkins*, that the Michigan Supreme Court would treat a completed assignment of rents as a transfer of ownership.

Town Center argues that the title and language of the Michigan statute make it clear that only a security interest, not an ownership interest, is assigned under this law. (Appellant Br., App. R. 11, p. 28-29) Section 554.231 is titled "Assignment of Rents to Accrue as Additional Mortgage Security"[2] and the body of the statute says "it shall be lawful to assign the rents . . . as security in addition to the property described in [the] mortgage." Town Center would have us read the statute as expressing the Michigan legislature's intention to allow only transfers of security interests, and not ownership, based on its language authorizing assignments "as security in addition to the property." Mich. Comp. Laws § 554.231. Town Center reasons that the statute allows only for a security interest in the assigned rents, so any attempt to transfer ownership of the rents is blocked by the default rule that an assignment of rents is unenforceable.

Language that the assignment is "as security," however, does not foreclose an ownership transfer. For example, a deed of trust transfers a deed—which is commonly thought of as an ownership transfer—to a trustee to hold as security for obligations associated with a mortgage on the property. *See Sloman*, 233 N.W. at 218-19 (discussing respective rights of the mortgagor, trustee, and purchaser). And Michigan courts have consistently read § 554.231 as allowing for assignments of rents to be transfers of ownership once the statutory steps for perfection have been completed. We follow their lead in interpreting the language of § 554.231 as allowing for ownership interests to be transferred with an assignment of rents.

In the agreement at issue in this case, Town Center used broad language to "irrevocably, absolutely and unconditionally" transfer its right in a "present, absolute and executed assignment

---

[1]The statute includes two additional steps regarding service of the notice of default and filing that notice, Mich. Comp. Laws §§ 554.231, 554.232, that are not at issue here because all five statutory steps were completed before the bankruptcy petition was filed.

[2]Under Michigan law, "[a]n act's title is not itself authority of any sort, but it is properly considered to assist in determining the act's purpose and scope." *Cheboygan Sportsman Club v. Cheboygan Cty. Prosecuting Attorney*, 858 N.W.2d 751, 756 (Mich. Ct. App. 2014).

of the Rents and of the Leases" from the Town Center property. The only fair reading of this language is that Town Center assigned the rents to the maximum extent permitted by Michigan law. Because we hold that Mich. Comp. Laws § 554.231 allows for an ownership transfer in these circumstances, we find that Town Center did transfer ownership in the assigned rents to ECP before the bankruptcy petition was filed in this case. The broad language of the agreement evidences an intention to transfer ownership.

### 2.    Residual Rights of Assignor

Even with a transfer of ownership under § 554.231, Town Center argues that it retains some rights in the rents under Michigan law. If an assignor cures the default according to the agreement's terms, then the assignor is able to start collecting rents again. *See Sloman*, 233 N.W. at 220 (noting, under the analogous 1925 statute, that "the purpose of the act is to put the [assignee] in the shoes of the [assignor] *until the debt is paid*." (emphasis added)). Town Center reasons that if the rents from the property are thought of as a stream of money, Town Center continues to hold a contingent future interest in collecting those rents. The future interest is realized if and when Town Center cures the default. On the other hand, if the rents are thought of as payments that occur during the discrete time period between the event of default and a (potential) future cure, then ECP has the sole interest in those payments and Town Center has no interest in them. This holds true even if Town Center later cures the default. We find the latter conceptualization of a discrete period to be more aligned with the text of the statute. *See* Mich. Comp. Laws § 554.232 (creating right to assign "rents to accrue . . . during the period the mortgage is in effect").

Town Center also points to a second residual right: Michigan courts have created restrictions on how the assignee can use rents collected under the law. In *Smith*, the court filled in the "obviously intended requirement that rents collected by the [assignee] shall be applied on the mortgage debt." 106 N.W.2d at 519 (quoting *Sloman*, 233 N.W. at 218). The court approved use of the collected rents to pay the debt, property taxes, and insurance policy premiums. *Id*. at 517-18. Neither the Michigan Supreme Court nor the Michigan Court of Appeals has concluded that these restrictions on the assignee's use of rent money create a property right vested in the assignor. We decline to create a new rule of Michigan property law on this issue, especially

because such a rule would conflict with language used by Michigan appellate courts. *See Otis Elevator*, 522 N.W.2d at 733 (concluding that the assignor "no longer had an interest in the rents").

In summary, Michigan law treats a completed assignment of rents as a change of ownership and the assignor of those rents does not retain residual property rights in the assigned rents.

### C.        Scope of Bankruptcy Estates under the Federal Bankruptcy Code

Federal law determines the scope of the bankruptcy estate, which is broad. *Demczyk v. Mut. Life Ins. Co. of New York (In re Graham Square, Inc.)*, 126 F.3d 823, 831 (6th Cir. 1997). The Supreme Court has explained that "[b]oth the congressional goal of encouraging reorganizations and Congress' choice of methods to protect secured creditors suggest that Congress intended a broad range of property to be included in the estate." *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204 (1983). In *Whiting Pools*, personal property that had been seized by the Internal Revenue Service under a tax lien was determined to be part of the bankruptcy estate. *Id.* at 211. The Court found that the IRS had a secured interest in the property, but that the debtor still retained an ownership interest until sale to a bona fide purchaser at a tax sale. *Id.* A broad definition of the bankruptcy estate was in line with the congressional intent to allow Chapter 11 reorganization so "the business would continue to provide jobs, to satisfy creditors' claims, and to produce a return for its owners." *Id.* at 203 (quoting H.R. Rep. No. 95-595, p. 220 (1977)).

Despite the broad scope of Chapter 11 bankruptcy estates, the assigned rents in this case are not properly included in the Town Center estate. As discussed above, Town Center does not retain ownership of the rents and does not hold residual property rights in those rents. Instead, the rents belong to ECP. Our holding is in line with the majority of bankruptcy court decisions that have addressed this issue. In 1992, a bankruptcy court in the Western District of Michigan held that assigned rents under Mich. Comp. Laws § 554.231 were not part of the bankruptcy estate because the debtor maintained only an inchoate right to future rents. *In re Mount Pleasant Ltd. P'ship*, 144 B.R. 727, 738 (Bankr. W.D. Mich. 1992). A recent decision from the Eastern

District of Michigan agreed that assigned rents are property of the assignee, not part of the bankruptcy estate. *In re Madison Heights Grp., LLC*, 506 B.R. 734, 744 (Bankr. E.D. Mich. 2014). A bankruptcy court in the Southern District of New York, interpreting § 554.231, reached a similar conclusion, finding the language in *Otis Elevator* to be especially persuasive. *In re Woodmere Inv'rs Ltd. P'ship*, 178 B.R. 346, 359-60 (Bankr. S.D.N.Y. 1995).

The bankruptcy court in this case relied on its own previous opinion that came to the opposite conclusion. *In re Town Center Flats, LLC*, 531 B.R. 176, 179 (Bankr. E.D. Mich. 2015) (citing *In re Newberry Square, Inc.,* 175 B.R. 910 (Bankr. E.D. Mich. 1994)). These two decisions were motivated by a policy concern that excluding the assigned rents from the estate would effectively foreclose Chapter 11 relief for companies like Town Center that own a single property and receive their sole stream of revenue from rents of that property. *Town Center*, 531 B.R. at 181-82. We recognize the concern of Town Center—and the bankruptcy court—that single-asset real estate entities may have limited options under Chapter 11 in this situation. Michigan law, however, is clear on the matter and governs despite other policy concerns.

## III.  CONCLUSION

Mich. Comp. Laws § 554.231 allows for transfers of ownership when an agreement to assign rents indicates an intention to do that, has been recorded, and default has occurred. Because Town Center does not have rights under Michigan law in the perfected assignment of rents here, those rents are not included in the bankruptcy estate. Accordingly, we **reverse** the order of the bankruptcy court.