**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 18a0302n.06

**No. 17-2374**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| WBCMT 2003-C9 ISLAND LIVING, LLC a Michigan limited liability company, | ) ) ) | |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| SWAN CREEK LIMITED PARTNERSHIP, | ) ) ) | |
| Defendant-Appellant. | ) | |

**FILED**
Jun 15, 2018
DEBORAH S. HUNT, Clerk

---

Before:  BOGGS and GRIFFIN, Circuit Judges; HOOD, District Judge.[1]

HOOD, District Judge.  This case involves a debtor mobile-home-park developer, who agreed to an assignment of rents and increased interest in the event it defaulted on its mortgage, but upon default, decided that the default interest was more than it wished to pay.  This appeal is the result of the debtor's attempt to avoid paying that interest through its motion to terminate the receivership and obtain the rents held by the receiver but already assigned to and owned by its creditor.  For the reasons stated herein, the order denying the motion to terminate the receivership is AFFIRMED.

---

[1] The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation.

I.

The Appellant, Swan Creek Limited Partnership ("Swan Creek"), borrowed $4.35 million from La Salle Bank ("the Lender") in November 2003. The loan is evidenced by a Promissory Note (the "Note"), an Assignment of Leases and Rents, and a Mortgage. It is undisputed that Swan Creek failed to make the final balloon payment of nearly $3.7 million, and on December 1, 2013, Swan Creek was in default under the terms of the Note. In June 2014, the Appellee, WBCMT 2003-C9 Island Living, LLC ("Island Living") assigned the Lender's interest in the Note, Mortgage, and Assignment of Rents in full, and Island Living stepped into the place of the original lender.

In November 2014, Island Living requested that the District Court appoint a Receiver, which Swan Creek opposed. The District Court appointed a Receiver to operate the property (the "Receiver Order," R. 18), including collecting all rent, revenues, and other benefits of the property, and managing the day-to-day operations of the property. The Receiver Order permitted the Receiver to take possession of the funds collected from the operation of the property. It further provided that if the Receiver had funds in excess of the operating expenses (excluding a reserve at an amount to be determined by the Receiver) that such funds would be provided to Island Living to be applied to the amounts owed by Swan Creek under the Note. Specifically, the district court ordered that:

> Should the Receiver have funds in excess of the anticipated Operating Expenses, including an appropriate reserve in an amount to be approved by Plaintiff, for the Mortgaged Property, the Receiver shall provide all such funds, on a monthly basis, to Plaintiff. All such funds shall be applied to the amount owed to Plaintiff by the Defendant under the Mortgage for the Mortgaged Property. To the extent that there are any funds that exceed amounts due to Plaintiff under the Loan Documents, such funds shall be subject to further order of the Court.

R. 18, Receiver Order, PID 360-61. The Receiver held all of the funds in excess of the operating expenses for the duration of the receivership.

Island Living pursued a non-judicial foreclosure in December 2014, and, ultimately, on December 1, 2016, Island Living foreclosed on the property and purchased it at the Sheriff's sale for $4,105,012.89. Just prior to the close of the redemption period, Swan Creek redeemed the property for $4,209,062.41, which represented the principal amount paid at the Sheriff's sale as well as the regular interest that accrued from the date of the sale until the redemption on May 26, 2017. After the redemption, Swan Creek owed Island Living more than $650,000, comprising primarily default interest.

The loan documents assigned all rights in future and existing leases, agreements, and rents affecting the mortgaged property to the lender. The Assignment of Rents stated that:

> The parties intend that this Assignment grants a present, absolute, and unconditional assignment of the Leases, Rents, Lease Guaranties, and Bankruptcy Claims, Proceeds, and Other Rights, and shall immediately upon execution give Lender the right to collect the Rents and other sums due under the Lease Guaranties and to apply them in payment of the Debt.

R. 1–6, Assignment of Rents § 2.1, PID 96. The Assignment of Rents states that Swan Creek's license to collect rents terminated upon its default. It further provided that the Assignment of Rents terminated upon the satisfaction or discharge of the Mortgage.

The Note specifically provided that "neither Borrower nor any Principal shall be personally liable to pay the Principal Amount, or any other amount due, or to perform any obligation, under the Loan Documents, and Lender agrees to look solely to the Property and any other collateral heretofore, now, or hereafter pledged by any party to secure the Loan . . . ." R. 1–4, Note ¶ 11, PID 38-39. This exculpation provision was incorporated into the Mortgage.

Swan Creek argues that (1) the Receiver Order required the Receiver to apply the funds in excess of the operating expenses to the outstanding debt on a monthly basis; (2) that doing so would have resulted in a lower amount owed at the time of the redemption; (3) that the mortgage was extinguished upon the redemption; (4) and, accordingly, Swan Creek should now receive the funds the Receiver held during the receivership. The district court, however, held that the rents the Receiver collected must be turned over to Island Living, because the payments had already vested in Island Living under the Assignment of Rents, and the redemption did not retroactively eliminate Island Living's right to collect the rents.

## II.

This court has jurisdiction to hear this appeal pursuant to 28 U.S.C. § 1292(a)(2).

The parties agree that in a receivership proceeding, the lower court has "broad powers and wide discretion" in choosing a distribution plan. *Norwest Bank Wis., N.A.*, 245 F. App'x. 488, 491 (6th Cir. 2007) (citing *S.E.C. v. Basic Energy & Affiliated Res. Inc.*, 273 F.3d 657, 668 (6th Cir. 2001). This is an appeal of an order regarding the distribution of receivership funds; therefore the abuse-of-discretion standard applies.

## III.

a. Monthly Distributions

Swan Creek argues that the district court abused its discretion in finding that the Receiver was holding the excess funds for the benefit of Island Living and awarding those funds to Island Living because Swan Creek did not "receive credit" for the rents collected during the receivership. Swan Creek claims the Receiver was required to distribute the excess funds monthly to Island Living pursuant to the Receiver Order. Island Living claims that Swan Creek did not raise this argument in the lower court and should not be permitted to do so now. Swan Creek maintains that

it did raise the argument in its Supplemental Brief below when it argued that Island Living unreasonably delayed foreclosure and purposefully did not collect the funds during the receivership in an effort to inflate (through the accruing default interest) the amount due at the time of the redemption. Although this is related, it is not the same argument. Swan Creek did not argue, and the district court did not consider, whether the Island Living was required to seek distributions from the Receiver on a monthly basis. Swan Creek was, obviously, aware of the Receiver Order at the time it made the Motion to Terminate the Receivership, and could have raised this argument, but chose to waive it. As we have previously stated:

> Propounding new arguments on appeal in attempting to prompt us to reverse the trial court—arguments never considered by the trial court—is not only somewhat devious, it undermines important judicial values. . . . In order to preserve the integrity of the appellate structure, we should not be considered a 'second shot' forum, a forum where secondary, back-up theories may be minted for the first time.

*Isaak v. Trumbull Sav. & Loan Co.*, 169 F.3d 390, 396 n. 3 (6th Cir. 1999) (quoting *Estate of Quirk v. Comm'r of Internal Revenue*, 928 F.2d 751, 758 (6th Cir. 1991)). Accordingly, we will not consider whether Island Living was required to seek monthly distributions from the Receiver, lest it extinguish its right to collect those funds. Swan Creek waived that argument by failing to raise it below.

b. The Redemption Payment

Swan Creek claims that Island Living's right to the excess funds was extinguished upon receipt of the redemption payment, pursuant to Michigan law and our prior case law. The pertinent Michigan statute allows an assignment of rents to accrue from leases as a mortgage security in addition to the property described in the mortgage. Mich. Comp. L. § 554.231. Upon payment of the redemption amount, the mortgage is deemed satisfied. Mich. Comp. L. § 600.3244

The district court properly concluded that the Assignment of Rents and Mortgage provided a vested interest to Island Living in the rents held by the receiver during the receivership. These documents evidence that Swan Creek "absolutely and unconditionally assigns and grants to Lender" the right to receive the leases, rents, lease guaranties, and proceeds from the property; it also states, "Lender shall immediately be entitled to possession of all Rents and sums due under any Lease Guaranties . . . ." R. 1-6, Assignment of Rents, PID 94–98 . In the Assignment of Rents, Borrower Swan Creek "absolutely, unconditionally and irrevocably waives any and all rights to assert any setoff, counterclaim or crossclaim of any nature whatsoever with respect to the obligations of Borrower." *Id*. at PID 98. The Mortgage is equally clear as to the effect of a default: "Upon the occurrence of an Event of Default and without any action by Lender, Borrower shall have no further right to collect or otherwise receive such Rents, which will be absolute and sole property of Lender pursuant to those statutes." R. 1-5, Mortgage, PID 82.

Swan Creek primarily relies on one case for the proposition that Island Living should not receive the excess funds collected during the receivership. *In re Town Center Flats, LLC*, 855 F.3d 721 (6th Cir. 2017) presents very similar facts under a different procedural posture. In that case, Town Center, a residential-apartment complex, defaulted on a loan secured by a mortgage on the apartment building and an agreement to assign the rents from that building to the creditor in the event of a default. *Id*. at 723. The question presented was whether the assignment of rents created only a security interest, but not an ownership interest, such that the rents could be included in the bankruptcy estate. *See id*. at 724. We affirmed the district court, "finding that an assignment of rents is a transfer of ownership under Michigan law and thus the rents should not be included in the bankruptcy estate. . . . [T]he debtor, Town Center Flats, LLC, did not retain sufficient rights in

the assigned rents under Michigan law for those rents to be included in the bankruptcy estate." *Id.*

at 722. More specifically, we noted that:

> Michigan courts generally discuss assignments of rents under § 554.231 as ownership transfers. The Michigan Supreme Court held that this statute puts the assignee "in the shoes of the mortgagor until the debt is paid, with all his rights to the rents and profits as long as he, under the general law of mortgages, could enjoy them." Smith, 106 N.W.2d at 520 (quoting *Sloman*, 233 N.W. at 220). In 1994, the Michigan Court of Appeals held that a prior-perfected interest in assigned rents had priority over an interest held by a judgment creditor who sought to garnish rents. *Otis Elevator Co. v. Mid-America Realty Investors*, 206 Mich.App. 710, 522 N.W.2d 732, 733 (1994). The judgment creditor "could not garnish rents because [the assignor] no longer had an interest in the rents." *Id.* Once an assignee has: 1) entered into an agreement to assign rents; 2) recorded that agreement; and 3) default has occurred, then the assignee's rights "are perfected and binding against the assignor" and the assignor "no longer ha[s] a valid property interest in the rents." *Id.* at 734. The assignor has the legal right to collect the rents directly from tenants once notice of the default has been filed in the county's register and served on the tenants. MICH. COMP. LAWS §§ 554.231, 554.232. Michigan courts have generally treated the assignment of rents as a transfer of ownership once the agreement has been completed and recorded and a default has occurred.

*Id.* at 725. Swan Creek cherry-picked one sentence from the *In re Town Center* opinion to support

its argument that it is entitled to the rents collected during the period of default: "[i]f an assignor

cures the default according to the agreement's terms, then the assignor is able to start collecting

rents again." *Id.* at 727. That is a blatant misreading of the holding of the case, completely ignoring

the words "start" and "again" in that sentence. In the same paragraph, a few lines below, we

address the exact situation presented here:

> [I]f the rents are thought of as payments that occur during the discrete time period between the event of default and a (potential) future cure, then [the creditor] has the sole interest in those payments and [the debtor] has no interest in them. This holds true even if [the

7

> debtor] later cures the default. We find the latter conceptualization
> of a discrete period to be more aligned with the text of the statute.

*Id.* at 727.

The district court's ruling is in conformity with our holding in *In re Town Center*. The district court properly held that "under the express terms of the Mortgage, the Assignment of Rents, and Michigan law—Island Living owned the rents that were paid before the redemption even though these rents were in the possession of the Receiver[,]" an interpretation that is "aligned with the text of the statute." R. 63, Receiver Order, PID 1459; *see In re Town Ctr. Flats, LLC*, 855 F.3d at 272.

Nor does the fact that the rents were collected and held by the Receiver rather than distributed to Island Living make any difference. As noted above, the assignment of rents effectuated a transfer of ownership upon default under Michigan law. *In re Town Ctr. Flats, LLC*, 855 F.3d at 725 (6th Cir. 2017). "The rights of the parties were neither changed nor affected by the receivership." *Kennison v. Kanzler*, 4 F.2d 315, 317 (6th Cir. 1925). The district court correctly held that the "Receiver was, in effect, holding the rents for Island Living. Simply put, at the time Swan Creek made the redemption payment, Island Living was *already entitled to all rents that the Receiver had previously collected*, and those rents therefore rightfully belong to Island Living." R. 63, Op. and Order Denying Mot. to Terminate Receivership, PID 1460.

c. Amount of Funds to which Island Living is Entitled

Finally, Swan Creek argues the district court erred because "nothing in the record supports the lower court's conclusion that **anything** was due and owing after [Island Living] received the redemption payment." Appellant Br. p. 24. The district court held a hearing in which it addressed this issue directly. R. 57. At that hearing, the district court asked counsel for Swan Creek if its argument was whether "the amount due under the loan document exceeds the 4.2 [million] . . .

because [Island Living] artificially inflated it. . . . Or the other argument [that], no, they've already been paid in full everything they are entitled to under the loan documents." *Id*. at PID 1133. Swan Creek argued the former, conceding that pursuant to the loan documents, including default interest, Island Living was owed something "in the ballpark" of $4.8 million (prior to the redemption), but that the amount was inequitable due to Island Living's alleged delay; on appeal Swan Creek now argues the latter. *See id*. at PID 1133–34; *see also* Appellant Br. p. 24. The district court, after holding a hearing, and partly as a result of Swan Creek's admissions at that hearing, determined that Swan Creek owed in excess of $650,000, an amount greater than the excess funds held by the Receiver and owned by Island Living at the time of the redemption. We cannot conclude that the district court abused its discretion in so doing.

IV.

For the reasons stated above, we **AFFIRM** the district court's Order denying Swan Creek's motion to terminate receivership and distribute funds.