RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 24a0240p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

IN RE: JASON ROBERT WYLIE; LEAH S. WYLIE,

*Debtors.*

─────────────────────────────────────────────

TIMOTHY J. MILLER, Trustee,

*Plaintiff-Appellant,*

*v.*

JASON ROBERT WYLIE; LEAH S. WYLIE,

*Defendants-Appellees.*

No. 24-1321

─────────────────

Appeal from the United States District Court for the Eastern District of Michigan at Detroit.
No. 23-cv-10952—Mark A. Goldsmith, District Judge.

United States Bankruptcy Court for the Eastern District of Michigan at Detroit.
Nos. 20-bk-49216; 21-ap-04012—Thomas J. Tucker, Bankruptcy Judge.

Decided and Filed:  October 23, 2024

Before:  SILER, GRIFFIN, and MATHIS, Circuit Judges.

─────────────────

## COUNSEL

**ON BRIEF:**  Jeffrey H. Bigelman, OSIPOV BIGELMAN, P.C., Southfield, Michigan, for Appellant.  Thomas R. Morris, MORRIS & MORRIS ATTORNEYS, P.L.L.C., Dexter, Michigan, for Appellees.

————————————

**OPINION**

————————————

GRIFFIN, Circuit Judge.

In this bankruptcy matter, the trustee sought to deny debtors Jason and Leah Wylie a discharge under 11 U.S.C. § 727, alleging that they transferred anticipated tax refunds from the bankruptcy estate by applying overpayments to future tax liabilities instead of receiving refunds. Following a bench trial, the bankruptcy court found that the Wylies transferred their anticipated 2019 tax refunds "with intent to hinder" the trustee and thus denied a discharge. The district court reversed, holding that the bankruptcy court's intent finding was clearly erroneous. We agree with the district court and remand for the bankruptcy court to enter a discharge.

I.

Financial troubles befell the Wylies in 2018, when Mr. Wylie's health problems forced him to stop working. As the couple contemplated filing for bankruptcy, they also delayed filing their 2018 and 2019 tax returns.

By March 2020, the Wylies' accountant had prepared their 2018 federal and state income tax returns, which showed substantial federal and state tax overpayments. Because of uncertainty about their 2019 tax liabilities, the Wylies "elected to apply their 2018 income tax overpayments to their 2019 tax liabilities, rather than receiving tax refunds." Making this election required no special paperwork—it simply involved writing the overpayment figure on the credit-forward line, instead of on the refund line, of the federal and state tax-return forms. The Wylies, through their accountant, filed their 2018 returns with that election.

Next, the accountant prepared the Wylies' 2019 returns, which showed similar overpayments. And just like the 2018 returns, the draft 2019 returns reflected a decision to apply the overpayments to the following year's tax liabilities. Mr. Wylie reviewed and approved those draft returns, authorizing the accountant to file them.

The next day, the Wylies filed their Chapter 7 petition for bankruptcy. And a few weeks after that, the Wylies' accountant filed the 2019 tax returns.

The bankruptcy trustee, plaintiff Timothy Miller, filed an adversary proceeding to deny the Wylies a discharge for several reasons under 11 U.S.C. § 727, and the parties ultimately went to trial on the first three counts of the trustee's First Amended Complaint. Count I alleged that the Wylies, by electing to apply their 2018 tax overpayments to their 2019 tax liabilities, transferred or concealed property, within one year before filing their bankruptcy petition, "with intent to hinder, delay, or defraud a creditor," under § 727(a)(2)(A). Count II alleged that the Wylies, by electing to apply their 2019 tax overpayments to their 2020 tax liabilities, transferred or concealed property after filing their bankruptcy petition, "with intent to hinder, delay, or defraud" the trustee, under § 727(a)(2)(B). And Count III alleged that the Wylies, by stating in a bankruptcy filing that the value of tax refunds owed to them was "Unknown," "knowingly and fraudulently . . . made a false oath or account," under § 727(a)(4)(A).

After a bench trial, the bankruptcy court dismissed Counts I and III but found in the trustee's favor on Count II, thus denying the Wylies a discharge under § 727(a)(2)(B). *Miller v. Wylie (In re Wylie)*, 649 B.R. 852, 856 (Bankr. E.D. Mich. 2023). The Wylies appealed that decision.[1] The district court, sitting as an intermediate court of appellate review, reversed the bankruptcy court's decision on Count II and held that the Wylies were entitled to a discharge. *Wylie v. Miller*, 657 B.R. 602, 603 (E.D. Mich. 2024). The trustee now appeals the district court's decision.

II.

This appeal concerns the Bankruptcy Code's prohibition of discharge on a finding that a debtor acted "with intent to hinder" the trustee. 11 U.S.C. § 727(a)(2). That section, in relevant part, provides:

> (a) The court shall grant the debtor a discharge, unless . . .
>
> > (2) the debtor, *with intent to hinder, delay, or defraud* a creditor or an officer of the estate charged with custody of property under this

---

[1]The trustee did not cross-appeal the dismissals of the other counts.

title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

>(A) property of the debtor, within one year before the date of the filing of the petition; or

>(B) property of the estate, after the date of the filing of the petition.

*Id.* (emphasis added). Courts construe § 727 "liberally in favor of the debtor" because a total bar to discharge is an "extreme penalty" for an individual debtor. *See Wise v. Wise (In re Wise)*, 590 B.R. 401, 433 (Bankr. E.D. Mich. 2018) (citations omitted); *see also* 6 Collier on Bankruptcy ¶ 727.01[4] (Matthew Bender & Co. ed., 16th ed. 2024). Accordingly, "[t]he reasons for denial of a discharge must be real and substantial rather than technical and conjectural." 6 Collier on Bankruptcy ¶ 727.01[4] (citing *Com. Bank & Trust Co. v. Burgess (In re Burgess)*, 955 F.2d 134 (1st Cir. 1992)).

The sole issue on appeal concerns the bankruptcy court's finding that the Wylies transferred their anticipated 2019 tax refund "with intent to hinder" the trustee.[2] On appeal from the district court, we focus solely on the bankruptcy court's decision, not the district court's intermediate one. *Town Ctr. Flats, LLC v. ECP Com. II LLC (In re Town Ctr. Flats, LLC)*, 855 F.3d 721, 724 (6th Cir. 2017). We review the bankruptcy court's legal conclusions de novo, *id.*, and its factual findings—such as a finding of intent—for clear error, *Barclays/Am. Bus. Credit, Inc. v. Adams (In re Adams)*, 31 F.3d 389, 393 (6th Cir. 1994). "A finding of fact is clearly erroneous 'when although there is evidence to support it, the reviewing court, on the entire evidence, is left with the definite and firm conviction that a mistake has been committed.'" *United States v. Mathews (In re Mathews)*, 209 B.R. 218, 219 (B.A.P. 6th Cir. 1997) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985)). We are left with such a definite and firm conviction here.

---

[2]The parties do not dispute other relevant findings by the bankruptcy court, including that the Wylies' rights to receive federal and state tax refunds for 2018 and 2019 were the Wylies' "property," and that, by electing to apply their refunds to future tax liabilities, the Wylies "transferred" or "concealed" that property. 11 U.S.C. § 727(a)(2).

A.

It is undisputed that § 727(a)(2) requires culpable, specific intent to trigger the denial of a discharge.  Under that section, the party objecting to a debtor's discharge must prove, by a preponderance of the evidence, the debtor's "actual intent" to hinder, delay, or defraud.  6 Collier on Bankruptcy ¶ 727.02[3][a] ("Absent a specific intent to [hinder the trustee], a discharge should not be denied." (collecting cases)); *see also In re Adams*, 31 F.3d at 394.  Although our court has not had occasion to expound on the requirement of specific intent in the § 727(a)(2) context, it is a familiar concept in bankruptcy.

The Supreme Court's decision in *Kawaauhau v. Geiger* is instructive.  523 U.S. 57 (1998).  There, the Court analyzed a similar intent-based section of the Bankruptcy Code, § 523(a)(6), which prohibits discharge of certain debts resulting from "willful and malicious injury by the debtor."  *Id.* at 60–61.  At issue was whether that statutory language "cover[s] acts, done intentionally, that cause injury . . . or only acts done with the *actual intent* to cause injury." *Id.* at 61 (emphasis added) (footnote omitted).  The Court adopted the latter interpretation; given § 523(a)(6)'s specific-intent requirement, it will render a debt nondischargeable only if there was "a deliberate or intentional *injury,* not merely a deliberate or intentional *act* that leads to injury." *Id.*  In other words, "actual intent" requires that the debtor intend "the *consequences* of an act, not simply the act itself."  *Id.* at 61–62 (internal quotation marks omitted).

Because both § 523(a) and § 727 provide ways to restrict a debtor's discharge of debts, we have previously relied on the Supreme Court's guidance on § 523(a) to interpret § 727.  *See In re Adams*, 31 F.3d at 394 (applying "the Supreme Court's reasoning" on the burden of proof for § 523(a) to § 727).  And *Kawaauhau*'s explanation of § 523(a)'s actual-intent requirement maps on to § 727's as well.  After all, it would be incongruous if § 727, which carries the "extreme penalty" of a complete denial of discharge of any debts, *In re Wise*, 590 B.R. at 433, required a lesser showing of intent than that required by § 523(a), which prohibits discharge of only certain ones, *see Rosen v. Bezner*, 996 F.2d 1527, 1531 (3d Cir. 1993) ("Completely denying a debtor his discharge [under § 727], as opposed to . . . declining to discharge an individual debt pursuant to § 523, is an extreme step and should not be taken lightly.").

*Wise*, a case that extensively analyzed the intent requirement in § 727(a)(2)(A), aptly articulated the intent requirement this way: "intent to hinder" a creditor means "to act improperly to make it more difficult for a creditor to collect a debt." 590 B.R. at 441 (internal quotation marks omitted). That interpretation appropriately focuses on whether the debtor specifically intended the *consequence* the statute is concerned with: hindering a creditor, *i.e.*, making it more difficult for a creditor to collect a debt.

Although *Wise*'s facts led it to focus on slightly different aspects of § 727(a)(2) than those at issue here, the statute's language renders any differences inconsequential, so we can apply a modified version of *Wise*'s interpretation. For instance, although *Wise* was concerned with pre-petition action under § 727(a)(2)(A), its interpretation logically applies to post-petition conduct under § 727(a)(2)(B) because those two subsections use the same intent language. *See* 11 U.S.C. § 727(a)(2). And although *Wise* addressed action taken against a creditor, we can extend its interpretation to actions taken against "an officer of the estate" (*i.e.*, a bankruptcy trustee). *See id.* After all, one of a bankruptcy trustee's primary objectives is to protect creditors. *See id.* § 704(a)(1) ("The trustee shall . . . collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest.").

In sum, to support a factual finding that the debtor acted "with intent to hinder" a trustee under § 727(a)(2)(B), there must be evidence that the debtor acted with the specific intent to make it more difficult for the trustee to facilitate creditors' collection of debts from the estate.

B.

With that understanding, we now review the bankruptcy court's intent findings here. Such findings involve weighing the debtors' "credibility and demeanor," so ordinarily we would defer to the bankruptcy court's assessment. *See In re Burgess*, 955 F.2d at 137 (quoting *Williamson v. Fireman's Fund Ins.*, 828 F.2d 249, 252 (4th Cir. 1987)). But here, the bankruptcy court's findings on credibility and intent for two similar counts under § 727(a)(2) are irreconcilable.

Start with Count I, which the bankruptcy court dismissed because the trustee "failed to prove" intent. Recall that Count I alleged, under § 727(a)(2)(A), that the Wylies transferred their 2018 tax overpayments "with intent to hinder, delay, or defraud a creditor . . . within one year before the date of the filing of the petition."

The bankruptcy court dismissed that count for lack of specific intent. Based on the testimonies of the Wylies and their accountant, all of which the bankruptcy court found "credible," the bankruptcy court found that the Wylies' intent "was not to hinder, delay, or defraud creditors." Rather, the bankruptcy court concluded that the Wylies' "sole" and "only intent in making their 2018 tax refund elections was to try to make sure that their taxing authority creditors"—the IRS and the state of Michigan—"would be paid in full for the 2019 taxes." True, that preference reflected the Wylies' intent to pay certain creditors (the taxing authorities) over others. But as the bankruptcy court correctly observed, "as a matter of law, a debtor's mere intent to prefer one creditor over other creditors cannot be deemed an intent 'to hinder, delay, or defraud' a creditor or creditors, within the meaning of § 727(a)(2)(A)." *See* 6 Collier on Bankruptcy ¶ 727.02[3][c] ("The intent to prefer creditors is not equivalent to the intent to hinder, delay or defraud creditors." (collecting cases)).

Now, consider Count II, on which the bankruptcy court based the denial of discharge. Recall that Count II alleged, under § 727(a)(2)(B), that the Wylies transferred their 2019 income tax overpayments "with intent to hinder, delay, or defraud" the trustee "after the date of the filing of the petition."

The bankruptcy court found that the Wylies "*did intend* to hinder the Trustee in making their 2019 Tax Refund Transfers," yet it identified no meaningful factual differences between the 2018 and 2019 tax elections to support this different finding. Inexplicably, it asserted that "the testimony of the Debtors themselves" supported its conclusion, even though that testimony points in the opposite direction. In the bankruptcy court's words:

> Jason Wylie and Leah Wylie both admitted in their trial testimony that the purpose of making their 2019 Tax Refund Transfers *was the same kind of purpose they had when they made their 2018 tax refund elections — to try to make sure that their 2020 taxes would be paid*. As the Court has discussed in Part III.C.1.b of this Opinion, this purpose is essentially a purpose to prefer the Debtors' two

taxing authority creditors (the Internal Revenue Service and the State of Michigan) over their other creditors.  That is, the Debtors wanted to [e]nsure that their taxing authority creditors were paid in full, for 2020 taxes, in preference to their other creditors, many or most of which could not be paid in full.

(Emphasis Added).  Thus, according to the bankruptcy court's findings, the Wylies' "sole" and "only" intent when they made their 2019 tax refund elections "was the same kind of purpose they had when they made their 2018 tax refund elections — to try to make sure that their 2020 taxes would be paid."  Given that finding, the Wylies did not make either of those elections "with intent to hinder, delay, or defraud" the trustee.  11 U.S.C. § 727(a)(2).

Despite finding that the "same kind of purpose" motivated both elections, the bankruptcy court inferred specific intent because making a "post-petition" transfer of property "with this purpose is wholly inconsistent with the duties of the Chapter 7 Trustee."  The bankruptcy court reasoned that, given "the priority and distribution scheme of the Bankruptcy Code" and "the Trustee's duty under 11 U.S.C. § 704 to follow that scheme in administering the assets of the bankruptcy estate," the trustee "would not and could not give the Debtors' intended preferential treatment to these taxing authority creditors for 2020 taxes."  Thus, the bankruptcy court concluded, the Wylies' intent to ensure their 2020 taxes were paid "was at war with" the trustee's duties, so the Wylies "had, at a minimum, an intent to *hinder* the Trustee."

But in drawing this inference, the bankruptcy court misconstrued the specific-intent requirement.  It is not enough to show that the Wylies acted intending one thing (to ensure their taxes were paid), but that their action likely or even certainly would result in another consequence (hindering the trustee).[3]  Section 727(a)(2) instead requires that the evidence show that the Wylies acted specifically intending to hinder the trustee.  *Cf. Geiger,* 523 U.S. 61–62; *In re Wise*, 590 B.R. at 441.  By the bankruptcy court's own reasoning and findings, that evidence was lacking.

---

[3]Even so, the bankruptcy court's findings show that hinderance was not a certain result of the Wylies' action.  The Wylies ultimately received their tax refunds, after filing their 2020 tax returns, and then "promptly paid them over to the Trustee."  On that evidence, the bankruptcy court found that "although the Trustee *potentially might have been* hindered and delayed by the Debtors' 2019 Tax Refund Transfers, in reality the Trustee was not *actually* hindered or delayed."

And that lack of evidence was particularly clear given the bankruptcy court's assumption that the Wylies "were not intimately familiar with" the trustee's duties or the Bankruptcy Code's scheme of "distributions and priorities." So there is no basis to conclude that the Wylies even knew, let alone intended, that by trying to make sure their 2020 taxes were paid they would be hindering the trustee.

To be sure, the bankruptcy court *could have* based its decision on other evidence and arguments the trustee made to support an intent finding. For instance, "[a] continuing pattern of wrongful behavior" can support a finding of actual intent to hinder, 6 Collier on Bankruptcy ¶ 727.02[3][b], and the trustee presented evidence to that effect—including evidence of allegedly false statements in the Wylies' bankruptcy filings and allegedly fraudulent transfers of real estate from the Wylies to their relatives.

But the bankruptcy court explicitly rejected that evidence, finding it neither "persuasive [n]or very relevant in this particular case, which concerns only tax refunds." In perhaps the starkest example, the bankruptcy court considered and rejected the trustee's purported "smoking gun" evidence of intent—an email from the Wylies' accountant to Mr. Wylie about the draft 2018 tax returns. In that email, the accountant explained that he credited the overpayments toward future tax liabilities because, as the Wylies previously told the accountant, they "didn't want it refunded because creditors might go after it." As the bankruptcy court noted, that email, "[a]t first blush," seems to show the Wylies' intent to hinder creditors. But in the bankruptcy court's view, the email "merely shows the Debtors' intent to give preferential payment treatment to their taxing authority creditors," not intent to hinder.

In sum, the bankruptcy court's contradictory findings leave us "with the definite and firm conviction that a mistake has been committed." *In re Mathews*, 209 B.R. at 219 (quoting *Anderson*, 470 U.S. at 573).

## III.

For these reasons, we affirm the district court and remand to the bankruptcy court for an entry of discharge.